**Simon JOHNSON, Jr., Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

**No. 82A04–9812–CR–620.**

Court of Appeals of Indiana.

Dec. 29, 1999.

Transfer Denied March 1, 2000.

**330**

John D. Clouse, John P. Brinson, Evansville, Indiana, Attorneys for Appellant.

Jeffrey A. Modisett, Attorney General of Indiana, Liisi Brien, Deputy Attorney General, Indianapolis, Indiana, Attorneys for Appellee.

## OPINION

STATON, Judge

Following a jury trial, Simon Johnson, Jr. appeals his conviction for stalking as a Class C felony.[1] Johnson raises two issues on appeal, which we restate as:

I. Whether the evidence is sufficient to support his conviction.

II. Whether the statute under which Johnson's penalty for stalking was enhanced to a Class C felony is unconstitutional.

We affirm.

The facts most favorable to the verdict reveal that Johnson and the victim were involved in a personal relationship between 1989 and 1994. The victim had three children by Johnson. Johnson's behavior toward the victim was violent and controlling. Johnson beat the victim on two occasions. The victim ended the relationship in 1994 after the second beating.

After his relationship with the victim had ended, Johnson would call the victim at all hours of the night, accuse her of ruining his life, and tell her that she "better not be seeing anyone" or "[b]etter not have a man around the kids." Record at 68. Johnson called the victim frequently, and if the victim refused to talk to him, he would come to her home, beat on the windows and doors, and accuse her of having a man in the house. On these occasions, the victim would also find that the tires on her car had been flattened. Johnson talked about killing the victim, but stated he did not do so only because he loved her. The victim was frightened by these threats. As a result of this behavior, the State filed an information on January 15, 1998, charging Johnson with stalking the victim from August of 1997 to January 15, 1998.

On August 4, 1998, Johnson came to the victim's house at about 1:00 a.m. Johnson began hitting her bedroom window and asking to talk to her. As usual, he suspected that she had been with somebody that night, and he wanted to come inside to check whether a man was in the house. The victim would not let him in the house. Johnson went to the front door and knocked, and the victim repeatedly told him to leave. The knocking stopped. At 3:00 a.m., Johnson began knocking on the window again. He was calling her names and accusing the victim of having a man in the house. Again, the victim refused to let him in and told him to leave. Johnson left. At 6:00 a.m., he returned to the bedroom window. He stated that he was going to wait on whoever it was that the victim had in the house. Johnson went to the front door and knocked for approximately fifteen minutes. The victim called the police. Johnson was arrested. The victim testified that she was angry, tired, and depressed as a result of Johnson's behavior.

The State charged Johnson with a second count of stalking. Following a trial at which both counts of stalking were consid-

---

1. IND CODE § 35–45–10–5 (1998).

ered, Johnson was acquitted of the first count and convicted of the second count. Johnson appeals his conviction.

## I.

### Sufficiency of the Evidence

 Johnson argues that the evidence is insufficient to support his conviction for stalking. Specifically, Johnson argues that the evidence does not establish that he had repeated or continuing contact with the victim nor does it establish that the victim felt terrorized, frightened, intimidated, or threatened. When reviewing a claim of sufficiency of the evidence, we do not reweigh the evidence or judge the credibility of witnesses. *Jordan v. State*, 656 N.E.2d 816, 817 (Ind.1995), *reh. denied.* We look to the evidence and the reasonable inferences therefrom that support the verdict. *Id.* The conviction will be affirmed if evidence of probative value exists from which a jury could find the defendant guilty beyond a reasonable doubt. *Id.*

 In order to convict Johnson of stalking as a Class C felony, the State was required to prove that Johnson (1) stalked the victim, (2) while a criminal complaint of stalking that concerns an act by Johnson against the same victim was pending in a court, and (3) Johnson had been given actual notice of the complaint. IC 35–45–10–5(b)(3). The term "stalk" is defined by IND.CODE § 35–45–10–1 (1998):

As used in this chapter, "stalk" means a knowing or an intentional course of conduct involving repeated or continuing harassment of another person that would cause a reasonable person to feel terrorized, frightened, intimidated, or threatened and that actually causes the victim to feel terrorized, frightened, intimidated, or threatened....

Thus, in order to establish the first element of stalking as a Class C felony, the State was required to prove that Johnson (1) knowingly or intentionally, (2) engaged in a course of conduct involving repeated or continuing harassment of the victim, (3) that would cause a reasonable person to feel terrorized, frightened, intimidated, or threatened, and (4) that actually caused the victim to feel terrorized, frightened, intimidated, or threatened.

Johnson first argues that the State presented insufficient evidence to establish that he engaged in a course of conduct involving repeated or continuing harassment of the victim. He contends that the only evidence that supports this element is his conduct on August 4, 1998, and that this evidence, as a matter of law, does not constitute "repeated" or "continuing" harassment as those terms are meant by the anti-stalking law. Johnson argues that where harassment occurs over a period of only several hours, this behavior cannot constitute repeated or continuing contact.

 Johnson was acquitted on the first stalking charge, which had alleged that he stalked the victim from August of 1997 to January 15, 1998. However, he was convicted on the second charge, which alleged that his actions on or about August 4, 1998 constituted stalking. The second charge carried enhanced penalties because Johnson had a pending charge filed against him at the time he committed the acts comprising the second charge of stalking. Accordingly, in determining whether Johnson's conduct constituted repeated or continuing harassment of the victim, we may consider only Johnson's actions subsequent to the filing of the initial charge on January 15, 1998. More precisely, we consider only Johnson's actions on August 4, 1998 since the second charging information accused Johnson of stalking the victim based upon his actions on or about that date.[2]

2. The State's evidence at trial revealed other acts Johnson engaged in after the filing of the initial charge that might also have been used to establish Johnson's repeated or continuing harassment of the victim. Despite the filing

of the initial charge and the issuance of a no-contact order in connection with the charge, Johnson continued to make telephone calls to the victim. He called to be sure that the victim was not with another man. If the

On August 4, 1998, Johnson first came to the victim's house at 1:00 a.m. He began hitting her bedroom window and asking to talk to her. Johnson wanted to come into the house, but the victim would not let him. He went to the front door and knocked, and the victim told him to leave. The knocking stopped. At 3:00 a.m., Johnson began knocking on the victim's window again. He was calling her names and accusing the victim of having someone in the house. The victim refused to let him in and told him to leave. Johnson left. At 6:00 a.m., he returned to the bedroom window. He stated that he was going to wait on whoever it was that the victim had in the house. Johnson went to the front door and knocked for approximately fifteen minutes. Instead of letting him in the house, the victim called the police.

Indiana's anti-stalking law was first enacted in 1993. 1993 Ind. Acts 4464–65, P.L. 242–1993, § 4. Because this law is relatively new in Indiana, our case law regarding it is sparse. *See Landis v. State*, 693 N.E.2d 570 (Ind.Ct.App.1998), *rev'd in part*, 704 N.E.2d 113 (Ind.1998); *Waldon v. State*, 684 N.E.2d 206 (Ind.Ct. App.1997), *trans. denied; Burton v. State*, 665 N.E.2d 924 (Ind.Ct.App.1996), *trans. denied; Hendricks v. State*, 649 N.E.2d 1050 (Ind.Ct.App.1995); *Johnson v. State*, 648 N.E.2d 666 (Ind.Ct.App.1995). Only three of these cases—*Waldon, Hendricks,* and *Johnson*—address challenges to the sufficiency of the evidence supporting stalking convictions, and none of them address situations where the alleged act of stalking occurred over the course of a day

or less. Johnson argues that his actions, which occurred over a five to six hour period, were neither "repeated" nor "continuing" as those terms are meant by the anti-stalking law.

■ In construing a statute, we seek to ascertain and give effect to the intention of the legislature as expressed in the statute. In so doing, the objects and purposes of the statute in question must be considered as well as the effect and consequences of such interpretation. *State v. Windy City Fireworks, Inc.*, 600 N.E.2d 555, 558 (Ind.Ct.App.1992), *adopted on transfer*, 608 N.E.2d 699 (Ind.1993). We presume words appearing in the statute were intended to have meaning, and we endeavor to give those words their plain and ordinary meaning absent a clearly manifested purpose to do otherwise. *Indiana Dept. of Human Services v. Firth*, 590 N.E.2d 154, 157 (Ind.Ct.App. 1992), *trans. denied.*

■ The harassment prohibited by Indiana's anti-stalking law must be either "repeated" or "continuing." "Repeat" is defined in WEBSTER'S NINTH NEW COLLEGIATE DICTIONARY (1985) as "to make, do, or perform again." *Id.* at 998. In considering the meaning of the term "repeatedly" in Alabama's stalking statute, the Alabama Court of Criminal Appeals held that the term means "more than once." *State v. Randall*, 669 So.2d 223, 227 (Ala.Crim. App.1995). *Accord, People v. Heilman*, 25 Cal.App.4th 391, 30 Cal.Rptr.2d 422, 427 (1994) (repeatedly means "more than one time"). Likewise, we conclude that the

victim would not talk to him, he would arrive at the house, beat on her bedroom window, and accuse her of being with another man. He would ask to be let in the house, but the victim always refused.

In June of 1998, the victim arrived home one night at about 1:00 a.m. As she pulled into the driveway, Johnson opened the door of her van and entered. He accused of her "whoring around." Record at 92. Johnson remained in the van for approximately one hour, refusing to get out unless she drove him home, which she eventually did.

The State's reasons for referring only to Johnson's acts on or about August 4, 1998 in the charging information are unclear. Because we conclude that Johnson's behavior on August 4, 1998 is sufficient, standing alone, to establish repeated or continuing harassment of the victim, we do not address whether we might have also considered Johnson's behavior between the filing of the initial charge and August 4, 1998 in support of his conviction.

term "repeated" in Indiana's anti-stalking law means "more than once."

██ On three different occasions during the same night, Johnson banged on the victim's window and door, requested to be let in, and berated the victim. Because this behavior occurred more than once, it was repeated. It makes no difference that the behavior occurred over a short period of time. If the legislature had wanted to place parameters on the period of time over which such behavior could occur, it could have done so. *See* ARK.CODE ANN. § 5–71–229 (Michie 1997) (course of conduct defined as "a pattern of conduct composed of two (2) or more acts separated by at least thirty-six (36) hours, but occurring within one (1) year"). The evidence supports the conclusion that Johnson engaged in a course of conduct involving repeated harassment of the victim.

██ Next, Johnson argues that the evidence is insufficient to support the conclusion that the victim actually felt terrorized, frightened, intimidated, or threatened by his behavior on August 4, 1998. The victim testified that she was angry, tired, and depressed as a result of Johnson's behavior on August 4, 1998. She did not testify that this particular behavior caused her to feel terrorized, frightened, intimidated, or threatened. However, this fact can be inferred from the victim's other testimony. The victim testified that Johnson had talked about killing her during the time period of the initial charge, August of 1997 to January 15, 1998. Furthermore, the victim testified that Johnson's threats frightened her because she "knew eventually he was going to carry it out." Record at 72. Based upon this testimony, it would have been reasonable for the jury to infer that the victim's fear of Johnson remained at the time of the August 4, 1998 incident, and that she would have been frightened and threatened by his behavior.

Johnson argues that we may not consider this evidence because the victim's testimony related only to his behavior as charged in the first count of stalking. We disagree. Johnson's long course of bad behavior towards the victim had a direct impact on the feelings she might have had at the time Johnson committed the acts comprising the second charge of stalking. This evidence was probative of the victim's actual fear and would have been admissible even if Johnson had been charged only with the second act. *See Landis v. State*, 704 N.E.2d 113, 113 (Ind.1998). Moreover, the fact that Johnson was acquitted of the first stalking charge does not preclude us from considering evidence supporting that charge where the same evidence is also probative of the second stalking charge. *See id.*[3] As previously noted, we may not use this evidence to establish the repeated or continuing nature of Johnson's actions, but it does bear on other elements of the second stalking charge, such as Johnson's intent and the victim's fear and emotional distress. The evidence is sufficient to support Johnson's conviction.

## II.

### Constitutionality of IC 35–45–10–5(b)(3)

Johnson argues that the provision of the anti-stalking statute under which his penalty was enhanced to a Class C felony is unconstitutional. IC 35–45–10–5(b)(3) enhances the penalty for stalking from a Class D felony to a Class C felony where the defendant stalks the victim while he has a criminal complaint pending against him in a court for stalking the same victim and the defendant received actual notice of the pending complaint. Johnson takes issue with the fact that the penalty for his stalking conviction can be enhanced based upon the mere fact that he was charged with, but not convicted of, a previous act of stalking at the time he committed the second act.

---

**3.** Such evidence must comport with Ind. Evidence Rule 404(b). The standard for assessing the admissibility of prior bad acts evidence is discussed in *Hicks v. State*, 690 N.E.2d 215, 221 (Ind.1997).

**334**

Initially, we note that Johnson did not raise these constitutional challenges before the trial court. "The failure to file a proper motion to dismiss raising a constitutional challenge to a criminal statute waives the issue on appeal." *Regan v. State,* 590 N.E.2d 640, 645–46 (Ind.Ct.App. 1992). Johnson attempts to avoid waiver by arguing that the trial court's failure to dismiss the complaint on its own motion was fundamental error. To qualify as fundamental error, an error must be a clear and substantial blatant violation of basic and elementary principles that renders the trial unfair to the defendant. *Townsend v. State,* 632 N.E.2d 727, 730 (Ind.1994).

Johnson first argues that the enhancement is unconstitutional because it relieves the State of its burden of proving his guilt beyond a reasonable doubt. Specifically, Johnson contends that this statute does not require the State to prove beyond a reasonable doubt that he actually committed the first act of stalking. Johnson is, of course, correct that the State need not prove that he committed the first act of stalking. The State need only prove that a charge of stalking was pending when he committed the second act. This, however, does not render the statutory enhancement unconstitutional.

"The Due Process Clause of the Fourteenth Amendment protects an accused 'against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged.'" *Winegeart v. State,* 665 N.E.2d 893, 896 (Ind.1996) (quoting *In re Winship,* 397 U.S. 358, 364, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970)). The facts necessary to constitute the crime with which Johnson was charged are that Johnson (1) stalked the victim, (2) while a criminal complaint of stalking that concerns an act by Johnson against the same victim was pending in a court, and (3) Johnson had been given actual notice of the complaint. IC 35–45–10–5(b)(3). At the time Johnson committed the acts comprising the second charge of stalking, he

was on notice that his behavior would be punished more severely based upon the prior criminal complaint involving the same victim. The State was only required to prove beyond a reasonable doubt the fact of the pending charge, not that Johnson actually stalked the victim the first time. This provision does not contravene the Due Process Clause.

Next, Johnson argues that the statutory enhancement deprives him of his right to a trial by jury. We disagree. The second charge did not allege that Johnson actually committed the first act of stalking, only that he had been charged with a prior act of stalking and that he had actual notice of the charge. Accordingly, the State was not required to prove at a jury trial that Johnson committed the acts charged in the first count. Following a jury trial, Johnson was convicted of stalking the victim on August 4, 1998 while he had notice that a prior charge was pending against him. This was sufficient. Johnson was not denied his right to a jury trial.

Finally, Johnson contends that the elevation of the stalking penalty from a Class D felony to a Class C felony based upon the existence of a prior charge is an *irrational classification,* which contravenes Indiana's Equal Privileges and Immunities provision. *See* IND. CONST. art. 1, § 23. In *Collins v. Day,* 644 N.E.2d 72 (Ind.1994), our supreme court adopted a two-part test for analyzing claims that a law violates Article 1, § 23. The court held:

> Article 1, Section 23 of the Indiana Constitution imposes two requirements upon statutes that grant unequal privileges or immunities to differing classes of persons. First, the disparate treatment accorded by the legislation must be reasonably related to inherent characteristics which distinguish the unequally treated classes. Second, the preferential treatment must be uniformly applicable and equally available to all persons similarly situated.

*Id.* at 80. In reviewing whether a statute complies with the Equal Privileges and Immunities Clause, courts must exercise substantial deference to legislative discretion. *Id.* Johnson contends only that the penalty enhancement in this case is not reasonably related to the inherent characteristics of his class. We disagree.

Most stalkers have had a previous intimate relationship with their victims. Jennifer L. Bradfield, *Anti–Stalking Laws: Do They Adequately Protect Stalking Victims?*, 21 HARV. WOMEN'S L.J. 229, 234 (1998). Thus, by its nature, stalking is an offense that is likely to be repeated by the same offender against the same victim. By elevating the potential penalty for a second charge, the legislature has sought to deter the defendant from continuing his criminal behavior while the first charge moves toward trial. We think this enhancement is reasonably related to the characteristics of stalkers. IC 35–45–10–5(b)(3) does not contravene the Equal Privileges and Immunities Clause.

Affirmed.

BROOK, J., and NAJAM, J., concur.