**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

May 24 2012, 8:33 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**JEFFREY D. STONEBRAKER**
Clark County Chief Public Defender
Jeffersonville, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**ANN L. GOODWIN**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| JOSHUA M. SANTIAGO, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 10A01-1109-CR-493 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE CLARK CIRCUIT COURT
The Honorable Daniel E. Moore, Judge
Cause No. 10C01-1102-FB-29

**May 24, 2012**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**NAJAM, Judge**

## STATEMENT OF THE CASE

Joshua Santiago appeals his convictions for stalking, as a Class B felony; burglary, as a Class B felony; intimidation, as a Class D felony; invasion of privacy, as a Class A misdemeanor; resisting law enforcement, as a Class A misdemeanor; battery, as a Class A misdemeanor; and criminal mischief, as a Class B misdemeanor; and his adjudication as an habitual offender following a jury trial. Santiago presents the following issues for our review:

1.  Whether the trial court abused its discretion when it denied his motion to sever counts at trial.

2.  Whether the trial court abused its discretion when it admitted into evidence Santiago's prior bad acts.

3.  Whether the State presented sufficient evidence to support his stalking conviction.

4.  Whether his sentence is inappropriate in light of the nature of the offenses and his character.

We affirm.

## FACTS AND PROCEDURAL HISTORY

Santiago and K.H. began dating in August 2008. Santiago lived with K.H. and her two minor children in Charlestown intermittently over the next two years, until K.H. ended the relationship on December 15, 2010. But Santiago continued visiting K.H.'s apartment after that date, uninvited, and he told K.H. that he would kill her if she began dating someone else. On one occasion, Santiago tried to break down the door to K.H.'s apartment in an attempt to gain entry.

2

On January 6, 2011, K.H. obtained an order of protection against Santiago. In contravention of that order, Santiago "was constantly around [K.H.'s] apartment yelling and cussing," and he followed K.H. and her children when they left the apartment, "almost every single day." Transcript at 329. Santiago did not own a telephone, so he asked K.H.'s neighbors to let him use their telephones to call K.H. After the neighbors complained to the landlord, and in light of Santiago's attempt to break down the door to K.H.'s apartment, the landlord threatened to evict K.H. if the problems with Santiago continued.

Then, during the weekend of February 5 and 6, 2011, K.H. was home and Santiago "kept pushing stuff [under] the door [to her apartment], like pictures." Id. at 343. K.H. pushed the items back to Santiago. After some time, K.H. looked through the peep hole in her door to see if Santiago was outside, and she did not see him, so she prepared to leave the apartment. But when she opened the door, she saw Santiago crouching down just outside the door. He pushed the door open and forced her back inside the apartment. Santiago threatened to kill K.H., and then he began looking through her cell phone. He "threw [K.H.] against the wall" and then he forced her to the bedroom and raped her. Id. at 345. After Santiago left, K.H. did not call the police because her landlord had threatened to evict her if the police were called again.

The following weekend, K.H. and her children stayed with the children's father because K.H. was too scared to stay in her apartment. When K.H. and her daughter returned to the apartment on Sunday, February 13, she found that the front door was locked as she had left it. But when she got inside, she saw dirt tracked on the floor, and

the curtains she had left open were closed. K.H. then found Santiago asleep on her bed. K.H. yelled at Santiago, and then she and her daughter ran out of the apartment, and K.H. called her brother to tell him what had happened. The police arrived shortly thereafter, but Santiago had already fled. After searching the apartment for Santiago's point of access, they discovered that he had crawled into an attic and cut a hole through the ceiling in a bedroom.

On Monday, February 14, Charlestown police arrested Santiago and transported him to the police station. An officer secured Santiago with handcuffs to a built-in wooden bench in the book-in room. Santiago became "enraged" and began yelling at the officers. Id. at 206. Santiago threatened the officers, told them that he was going to make them shoot him, and yelled out crude insults about K.H. Then Santiago stood up and "jerked . . . the bench off of the wall[.]" Id. at 207. At that point, it took seven officers and a Taser gun to subdue Santiago.

The State charged Santiago with stalking, burglary, residential entry, invasion of privacy, intimidation, resisting law enforcement, battery, criminal mischief, and being an habitual offender. Prior to trial, Santiago moved to sever the offenses related to K.H. from those related to his arrest, but the trial court denied that motion after a hearing. The trial was bifurcated, with the habitual offender count tried separate from the other counts. The jury found Santiago guilty as charged in the first phase of the trial, and the jury adjudicated him to be an habitual offender in the second phase of the trial. The trial court entered judgment accordingly and sentenced Santiago to an aggregate term of forty-six and one-half years. This appeal ensued.

4

## DISCUSSION AND DECISION

## Issue One:  Motion to Sever

Santiago first contends that the trial court abused its discretion when it denied his motion to sever the charges against him at trial.  Santiago sought to have the charges related to K.H. tried separate from those related to his conduct after his arrest.  Indiana Code Section 35-34-1-11(a) provides that whenever two or more offenses have been joined for trial in the same indictment or information solely on the ground that they are of the same or similar character, the defendant shall have a right to a severance of the offenses.  In all other cases the court, upon motion of the defendant or the prosecutor, shall grant a severance of offenses whenever the court determines that severance is appropriate to promote a fair determination of the defendant's guilt or innocence of each offense considering:  (1) the number of offenses charged; (2) the complexity of the evidence to be offered; and (3) whether the trier of fact will be able to distinguish the evidence and apply the law intelligently as to each offense.  Id.

Santiago concedes that, here, severance was not mandatory under the statute.  Accordingly, we will only reverse the judgment and order new, separate trials if Santiago can "show that in light of what actually occurred at trial, the denial of a separate trial subjected him to such prejudice that the trial court abused its discretion in refusing to grant his motion for severance."  Brown v. State, 650 N.E.2d 304, 306 (Ind. 1995) (quoting Hunt v. State, 455 N.E.2d 307, 312 (Ind. 1983)).  The defendant's burden is to show a fair trial could not otherwise be had, not merely that severance would enhance the prospects for acquittal.  Broadus v. State, 487 N.E.2d 1298, 1302 (Ind. 1986).

5

Santiago "acknowledge[s] that the number of offenses charged and the complexity of the evidence offered were not of such a nature that it would be all that difficult for the trier of fact to distinguish the evidence and apply the law to each offense." Brief of Appellant at 16. Still, Santiago contends that "the evidence presented by the State to support the four offenses [related to his conduct after his arrest] created such an unflattering picture of him that the jury was likely to convict him of all the offenses involving [K.H.] on the basis that he was a bad person[.]" Id. In particular, Santiago points out that the State presented a video depicting his behavior at the Charlestown police station on February 14, 2011, and he maintains that "the jury would be willing to convict him of almost anything based on his actions depicted in the video." Id.

However, as prejudicial as the video may have been to Santiago, he cannot demonstrate that he was subjected to unfair prejudice as a result of the trial court's denial of his motion to sever. As Santiago concedes, the evidence, as a whole, was such that the jurors were not likely to be confused during trial. And given K.H.'s testimony regarding Santiago's similarly violent behavior relevant to the stalking count, we cannot say that Santiago was prejudiced by the presentation of the portion of the video such that he was denied a fair trial. In other words, we are not persuaded that Santiago's conduct at the police station was so inconsistent with his conduct vis-à-vis K.H. that the jury would have been surprised by his depiction in the video. We hold that the trial court did not abuse its discretion when it denied Santiago's motion to sever.

6

**Issue Two:  Evidence Rule 404(b)**

Santiago next contends that the trial court abused its discretion when it admitted evidence regarding his "prior bad conduct" in violation of Evidence Rule 404(b).  Brief of Appellant at 22.  The evidentiary rulings of a trial court are afforded great deference on appeal and are overturned only upon a showing of an abuse of discretion.  Willingham v. State, 794 N.E.2d 1110, 1116 (Ind. Ct. App. 2003).  A trial court's decision to admit evidence will not be reversed absent a showing of a manifest abuse of the trial court's discretion resulting in the denial of a fair trial.  Id.

Evidence Rule 404(b) provides that "evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith.  It may, however, be admissible for other purposes, such as proof of motive, intent, preparation, plan, knowledge, identity, or absence of mistake or accident . . . ."  In assessing admissibility of 404(b) evidence the court must (1) determine that the evidence of other crimes, wrongs, or acts is relevant to a matter at issue other than the defendant's propensity to commit the charged act and (2) balance the probative value of the evidence against its prejudicial effect pursuant to Rule 403.  Fry v. State, 748 N.E.2d 369, 372 (Ind. 2001) (citation omitted).  The relevance and balancing issues are reviewed for an abuse of discretion.  Id. (citation omitted).

Here, during a pretrial hearing and at trial, Santiago objected to the "admissibility of [testimony about] incidents between Santiago and [K.H.] which arguably were used to factually support [Santiago's] prior stalking conviction."[1]  Brief of Appellant at 23.

---

[1]  The State charged Santiago with stalking, as a Class B felony, based upon a prior "unrelated conviction . . . for stalking against [K.H.]"  Appellant's App. at 109; see Ind. Code § 35-45-10-5(c)(2).

7

Santiago "believes the State . . . intended to use the evidence of prior conduct not just to show motive, intent or other proper purpose such as course of conduct involving harassment[,] but also to create the 'forbidden inference' that Santiago was a person of bad character[.]" Id. at 24. In particular, Santiago objected to certain testimony by K.H., Officer Brian Gilbert, and K.H.'s daughter. We address each specific contention in turn.

K.H. began her testimony by describing the initial stages of her relationship with Santiago. After K.H. testified that "trouble" in the relationship began in approximately December 2008, defense counsel requested a side bar conference, and he objected to testimony about prior bad acts "based upon [his] prior motions." Transcript at 315. The trial court overruled the objection, and K.H. testified as follows:

> Q:    Alright [K.H.], when we last left you were telling us about that the troubles began December end of 2008.
>
> A:    Around—I'm guessing around that time. December or January.
>
> Q:    How did it begin?
>
> A:    I was working full time and I have my kids and he would leave and he would come back and he would wake me up and yelling and that's the way it started. He would wake me up and just be yelling and trying to wake me up and I had to get up in the morning and my kids had to go to school.
>
> Q:    Did you ever tell him not to do that?
>
> A:    Yes. I told him to either please stay at his sister's if that's where he was or please don't come in and wake us up.
>
> Q:    And did he respect that?
>
> A:    No. He repeatedly did it.
>
> Q:    What else happened? So that's how it began. What was the next stage?

8

A: There was times [sic] that I would ask him to leave and he wouldn't or he would argue with me. I would try to leave and he would hold the door so I couldn't get out. And then whenever he would go to his sister's I would tell him to stay gone, leave me alone. I'd lock the doors. He'd chase me and the kids around. He would constantly be behind the apartments. He followed me everywhere and called me constantly.

Id. at 316-18. K.H. continued to testify to several specific instances of Santiago's bad conduct towards her leading up to his arrest on February 14, 2011.

A defendant's prior bad acts are usually admissible to show the relationship between the defendant and the victim. Ross v. State, 676 N.E.2d 339, 346 (Ind. 1996). More specifically, "where a relationship between parties is characterized by frequent conflict, evidence of the defendant's prior assaults and confrontations with the victim may be admitted to show the relationship between the parties and motive for committing the crime." Iqbal v. State, 805 N.E.2d 401, 408 (Ind. Ct. App. 2004). Indeed, much of K.H.'s testimony is relevant to show motive because several incidents prompted K.H. to obtain the protective order referred to in the charging information. "Evidence of uncharged misconduct which is probative of the defendant's motive and which is inextricably bound up with the charged crime is properly admissible under [Evidence Rule] 404(b)." Willingham, 794 N.E.2d at 1116 (internal quotations omitted). The trial court did not abuse its discretion when it permitted K.H. to testify to Santiago's prior bad acts as they pertained to the deterioration of their relationship and the protective order, which were subjects "inextricably bound up" with the stalking charge.

Next, during direct examination of Officer Gilbert, the State asked him whether "there had been any other protective orders or no contact orders between Mr. Santiago

9

and [K.H.]" Transcript at 183. Officer Gilbert then replied, "Yes[,]" and defense counsel requested a sidebar conference. Id. Defense counsel renewed his objection to evidence of Santiago's prior bad acts. The trial court sustained the objection, in part, and prohibited the State from "mention[ing] formal protective orders being issued" prior to the January 2011 order. Id. at 186. But the trial court overruled the objection "as to the other acts, in as much as [the State was] offering them to prove the stalking, a pattern." Id.

Officer Gilbert then testified that: police were dispatched to K.H.'s residence in 2009 for a domestic disturbance involving Santiago, and K.H. "seemed to be scared;" on that occasion, Santiago "was wanted on a previous incident and he was hiding from us and had been arguing with [K.H.] . . . and he fled and barricaded himself in the attic[;]" protocol required that a SWAT team be dispatched to the scene; and he had "been involved in six calls involving Mr. Santiago personally." Transcript at 187-88. We hold that while Officer Gilbert may have overstepped the bounds with his reference to a "previous incident" and "six calls involving" Santiago, those passing references are too vague in the context of the evidence as a whole to have been unduly prejudicial to Santiago. And, for the reasons stated above, the testimony relevant to K.H.'s relationship history with Santiago was properly admitted. The trial court did not abuse its discretion when it permitted the challenged testimony.

Finally, Santiago objected when K.H.'s daughter was asked to describe what she had personally observed of the negative aspects of K.H.'s relationship with Santiago. The trial court overruled that objection, and K.H.'s daughter proceeded to testify that she

had observed the following: arguments between K.H. and Santiago; Santiago had knocked on the door to K.H.'s residence despite an order of protection; Santiago had followed them on occasion; Santiago attempted to get into the house when K.H. did not want him there; Santiago had thrown rocks at a window trying to get K.H.'s attention; and Santiago had threatened to kill K.H. Again, "[e]vidence of uncharged misconduct which is probative of the defendant's motive and which is inextricably bound up with the charged crime is properly admissible under [Evidence Rule] 404(b)." Willingham, 794 N.E.2d at 1116. The trial court did not abuse its discretion when it permitted this testimony relevant to K.H.'s relationship with Santiago and the order of protection.[2]

## Issue Three: Sufficiency of the Evidence

Santiago contends that the State presented insufficient evidence to support his stalking conviction. When the sufficiency of the evidence to support a conviction is challenged, we neither reweigh the evidence nor judge the credibility of the witnesses, and we affirm if there is substantial evidence of probative value supporting each element of the crime from which a reasonable trier of fact could have found the defendant guilty beyond a reasonable doubt. Wright v. State, 828 N.E.2d 904, 905-06 (Ind. 2005). It is the job of the fact-finder to determine whether the evidence in a particular case

---

[2] We note that Santiago complains that the trial court "did not limit the jury's consideration of such evidence by advising that Santiago's prior bad acts were presented only to prove the essential elements of the crime of stalking." Brief of Appellant at 27. But Santiago does not direct us to any part of the record showing that he requested a limiting instruction to that effect. Thus, Santiago has waived this issue for review. See Small v. State, 736 N.E.2d 742, 746 (Ind. 2000). In addition, Santiago argues, for the first time on appeal, that "a plain reading of [the stalking statute] would seem to require a showing that the intentional course of conduct resulted in the victim feeling terrorized or frightened." Brief of Appellant at 27. Thus, he maintains that the statute "does not suggest that the fear or intimidation can originate from prior conduct[.]" Id. But a defendant may not object on one ground at trial and raise another on appeal; any such claim is waived. Houser v. State, 823 N.E.2d 693, 698 (Ind. 2005).

11

sufficiently proves each element of an offense, and we consider conflicting evidence most favorably to the trial court's ruling. Id. at 906.

Initially, as the State correctly points out, to the extent Santiago contends that the charging information is defective, that issue is waived. It is well settled that "[a]ny challenge to the adequacy of an information must be made by motion to dismiss prior to arraignment. Otherwise, any error in that regard is waived." Vaillancourt v. State, 695 N.E.2d 606, 610 (Ind. Ct. App. 1998), trans. denied. Here, Santiago did not challenge the sufficiency of the information until the first day of trial, which was untimely. The issue is waived.

Still, Santiago maintains that "the evidence did not establish that on February 13, 2011, he had repeated or continuing contact with [K.H.]" as required by the statute. Brief of Appellant at 20. In particular, Santiago asserts that

> [t]he charging information references only conduct on February 13, 2011, and it is clear that Santiago only broke into [K.H.]'s apartment and was sleeping on her bed when she arrived home that day. Simply put, a single robbery is not "repeated or continuing harassment" as required by the stalking statute. This evidence alone is insufficient to support the stalking conviction.

Id. at 21 (citation omitted).

Indiana Code Section 35-45-10-1 provides that "stalk" means a knowing or an intentional course of conduct involving repeated or continuing harassment of another person that would cause a reasonable person to feel terrorized, frightened, intimidated, or threatened and that actually causes the victim to feel terrorized, frightened, intimidated, or threatened. Here, the charging information alleged that "[o]n or about February 13, 2011, in Clark County . . . [Santiago] did knowingly or intentionally stalk the person of

12

[K.H.], to-wit: breaking into the home of [K.H.] in Charleston and remaining there until she returned home, after a No Contact Order had previously been issued against [Santiago] regarding [K.H.]" Appellant's App. at 108.

Santiago asserts that "the State must be held to the allegations found within the charging information" and "[s]ince the State did not present evidence of repeated or continuing harassment on February 13, 2011[,] the evidence would not support a stalking conviction." Brief of Appellant at 21. But this court has held that where, as here, "an information alleges that an offense occurred 'on or about' a certain date, the State is not limited to presenting evidence of events that occurred on that particular date when time is not an element of the offense." Neff v. State, 915 N.E.2d 1026, 1032 (Ind. Ct. App. 2009), trans. denied. Further, when time is not an element of a crime, or 'of the essence of the offense,' the State is only required to prove that the offense occurred any time within the statutory period of limitations[.]" Id.

Santiago maintains that because he asserted an alibi defense, time is of the essence, and the State was limited to presenting evidence relevant to February 13. But the State counters that Santiago's notice of alibi defense was untimely pursuant to Indiana Code Section 35-36-4-1, which provides in relevant part that a defendant charged with a felony must file "a written statement of his intention" to offer an alibi defense no later than twenty days prior to the omnibus date. Here, the omnibus date was March 17, 2011, and Santiago did not file his notice of alibi until July 22. We agree with the State. Because Santiago did not timely assert an alibi defense, he cannot show that time was of the essence with respect to the stalking charge. Accordingly, the State was only required

13

to prove that the offense occurred any time within the statutory period of limitations. See Neff, 915 N.E.2d at 1032.

Again, Santiago's sole contention on the issue of the sufficiency of the evidence is that the State did not present evidence of repeated or continuing harassment, which is an element of the offense of stalking. See Ind. Code § 35-45-10-1. Our supreme court recently addressed the sufficiency of the evidence on this element of stalking in Nicholson v. State, 963 N.E.2d 1096, 1101 (Ind. 2012):

> A unanimous panel of the Court of Appeals in Johnson previously dealt with this issue:
>
>> The harassment prohibited by Indiana's anti-stalking law must be either "repeated" or "continuing." "Repeat" is defined in Webster's Ninth New Collegiate Dictionary (1985) as "to make, do, or perform again." Id. at 998. In considering the meaning of the term "repeatedly" in Alabama's stalking statute, the Alabama Court of Criminal Appeals held that the term means "more than once." State v. Randall, 669 So.2d 223, 227 (Ala. Crim. App. 1995); accord People v. Heilman, 25 Cal.App.4th 391, 400, 30 Cal. Rptr.2d 422 (1994) (repeatedly means "more than one time"). Likewise, we conclude that the term "repeated" in Indiana's anti-stalking law means "more than once."
>
> Johnson[ v. State, 721 N.E.2d 327, 332-33 (Ind. Ct. App. 1999), trans. denied]. In Johnson, the stalking occurred on three different occasions during the same night. Id. at 333. The Court of Appeals wrote, "[i]t makes no difference that the behavior occurred over a short period of time. If the legislature had wanted to place parameters on the period of time over which such behavior could occur, it could have done so." Id. at 333.

Here, the State presented extensive evidence that Santiago harassed K.H. more than once. For instance, the evidence shows that on or about February 5 or 6, 2011, while the protective order was in effect, Santiago threatened to kill K.H., "threw [her] against the wall," and then he forced her to the bedroom and raped her. Transcript at 345.

14

And on February 13, Santiago broke into K.H.'s apartment while she was not home. When K.H. arrived, she found Santiago sleeping on her bed. We hold that the State presented sufficient evidence to support Santiago's stalking conviction.

**Issue Four: Sentence**

Finally, Santiago contends that his sentence is inappropriate in light of the nature of the offenses and his character. Although a trial court may have acted within its lawful discretion in determining a sentence, Article VII, Sections 4 and 6 of the Indiana Constitution "authorize [] independent appellate review and revision of a sentence imposed by the trial court." Roush v. State, 875 N.E.2d 801, 812 (Ind. Ct. App. 2007) (alteration original). This appellate authority is implemented through Indiana Appellate Rule 7(B). Id. Revision of a sentence under Appellate Rule 7(B) requires the appellant to demonstrate that his sentence is inappropriate in light of the nature of his offenses and his character. See App. R. 7(B); Rutherford v. State, 866 N.E.2d 867, 873 (Ind. Ct. App. 2007). We assess the trial court's recognition or non-recognition of aggravators and mitigators as an initial guide to determining whether the sentence imposed was inappropriate. Gibson v. State, 856 N.E.2d 142, 147 (Ind. Ct. App. 2006). However, "a defendant must persuade the appellate court that his or her sentence has met th[e] inappropriateness standard of review." Roush, 875 N.E.2d at 812 (alteration original).

The Indiana Supreme Court more recently stated that "sentencing is principally a discretionary function in which the trial court's judgment should receive considerable deference." Cardwell v. State, 895 N.E.2d 1219, 1222 (Ind. 2008). Indiana's flexible sentencing scheme allows trial courts to tailor an appropriate sentence to the

circumstances presented. <u>See id.</u> at 1224. The principal role of appellate review is to attempt to "leaven the outliers." <u>Id.</u> at 1225. Whether we regard a sentence as inappropriate at the end of the day turns on "our sense of the culpability of the defendant, the severity of the crime, the damage done to others, and myriad other facts that come to light in a given case." <u>Id.</u> at 1224.

Here, the trial court imposed sentence as follows: fifteen years for stalking, as a Class B felony; fifteen years for burglary, as a Class B felony, enhanced by thirty years for being an habitual offender;[3] one and one-half years for intimidation, as a Class D felony; one year for invasion of privacy, as a Class A misdemeanor; one year for resisting law enforcement, as a Class A misdemeanor; one year for battery, as a Class A misdemeanor; and 180 days for criminal mischief, as a Class B misdemeanor. The trial court ordered the sentences for stalking, burglary, and invasion of privacy to run concurrently. And the court ordered the remaining sentences to run concurrently, but consecutive to the fifteen-year concurrent sentences for stalking, burglary, and invasion of privacy. And, again, the sentence for burglary was enhanced by thirty years for being an habitual offender. Thus, Santiago's total aggregate sentence is forty-six and one-half years, or almost twenty years less than the maximum possible sentence.

Santiago concedes that it would be "disrespectful to suggest [that] the nature of the offenses was not serious." Brief of Appellant at 31. Still, he maintains that his "were not the worst possible examples of such offenses." <u>Id.</u> But the trial court did not impose the maximum sentence, so it is of no moment that Santiago's were not the "worst" offenses.

---

[3] Santiago claims that the trial court's order did not specify that the habitual offender enhancement was attached to the burglary conviction, but our review of the record shows otherwise. Appellant's App. at 183-84.

The evidence shows that Santiago threatened to kill K.H. in front of her daughter; raped K.H.; broke into K.H.'s residence through a hole he made in the ceiling of her son's bedroom; and required seven officers to subdue him at the police station.[4] We cannot say that Santiago's forty-six-and-one-half-year sentence is inappropriate in light of the nature of the offenses.

Santiago also contends that his sentence is inappropriate in light of his character. He points out that as a child, his mother was "absent," his father physically abused him, and he was placed in foster care. Brief of Appellant at 31. And Santiago earned his GED. Finally, he maintains that while he has been convicted of stalking K.H. three times, twice before the instant conviction, his criminal history "does not suggest Santiago has been a long standing threat to the community at large." Id. But the State contends that Santiago is "among the worst of stalkers" given that he "kept on stalking [K.H.], even after being convicted twice for the same offense[.]" Brief of Appellee at 24. And Santiago was on probation from his most recent conviction for stalking K.H. when he committed the instant offenses. We cannot say that Santiago's sentence is inappropriate in light of his character.

Affirmed.

DARDEN, J., concurs.

RILEY, J., concurs in part and dissents in part with separate opinion.

---

[4] The evidence does not support the dissent's characterization of Santiago's conduct as merely indicative of an "unhealthy infatuation" or "fascination" with K.H.

17

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| JOSHUA M. SANTIAGO, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No.  10A01-1109-CR-493 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

**RILEY, Judge, concurring in part and dissenting in part**

While I agree with the majority's opinion on Issues 1, 2, and 3, I respectfully dissent from the majority's decision that Santiago's sentence is not inappropriate in light of his character and the nature of the offense.  Without diminishing the severity of Santiago's charges, the nature of these charges and Santiago's character do not warrant the imposed sentence.  The evidence clearly reflects Santiago's unhealthy infatuation with K.H. and the instant charges are a direct result of this constant focus on her.  Although he threatened her and her children, he used no violence towards K.H. and the only immediate damage is material.  Santiago's criminal history equally reflects his obsession with K.H.:  his only two prior felony convictions for stalking involved the same victim and his probation violation was a result of the instant charges.  While this is

18

in line with his fascination for K.H., at the same time, it suggests that Santiago is not a threat to the community at large. Based on these facts, I would affirm the sentences for the separate convictions but reduce the habitual offender enhancement from thirty years to fifteen years and thus impose an aggregate sentence of thirty-one and one-half years.