**MEMORANDUM DECISION**

Pursuant to Ind. Appellate Rule 65(D), this
Memorandum Decision shall not be regarded as
precedent or cited before any court except for the
purpose of establishing the defense of res judicata,
collateral estoppel, or the law of the case.



FILED

Jul 22 2016, 9:42 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Nicholas J. Hursh
Shambaugh, Kast, Beck & Williams, LLP
Fort Wayne, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Michael Moore, <br> *Appellant-Respondent,* <br><br> *v.* <br><br> Brittney Baker, <br> *Appellee-Petitioner.* | July 22, 2016 <br><br> Court of Appeals Case No. <br> 02A03-1601-PO-109 <br><br> Appeal from the Allen Circuit Court <br><br> The Hon. Thomas J. Felts, Judge <br> The Hon. Andrea R. Trevino, <br> Magistrate <br><br> Trial Court Cause No. 02C01-1507-<br>PO-1982 |

**Bradford, Judge.**

# Case Summary

[1]     Appellant-Respondent Michael Moore and Appellee-Petitioner Brittney Baker

were involved in a romantic relationship and had a child together, who was

nineteen months old in July of 2015. Moore and Baker's relationship ended

when Baker was still pregnant with their child. Sometime in 2014, Moore came to Baker's house, and, claiming to be a police officer, banged on windows around the house, breaking one, as Baker hid in the bathroom with their son. On July 8, 2015, Moore came to Baker's workplace after being told he was not welcome and followed Baker around for twenty to thirty minutes, swearing at her, "getting in her face," and "storming" around. Baker again hid in the bathroom while a coworker called police.

[2] On July 8, 2015, Baker requested and received an *ex parte* order for protection against Moore. Following a hearing in which Moore participated, the trial court issued an order for protection against Moore. Moore contends that the record contains insufficient evidence to sustain the trial court's order for protection. Because we disagree, we affirm.

# Facts and Procedural History

[3] Moore and Baker were romantically involved and have a son together. Moore and Baker ended their relationship when Baker was seven months pregnant, and, as of July 2015, their son was nineteen months old. At some point in 2014, Moore came to the house Baker was renting and began pounding on the door, saying, "Open up! This is the cops." Tr. p. 19. When Baker locked herself and her son in the bathroom, Moore began going around the house banging on all of the windows, breaking one. According to Baker, Moore came over because she was not responding to his text messages.

[4]     In the two to three months prior to July of 2015, Moore became "very aggressive … with the texting and stalking[,]" requesting to see his son more often. Tr. p. 12. If Baker did not immediately respond to Moore's inquiries about their son or requests to see him, he would "just keep calling, 20 times in a row, or texting [Baker] non-stop." Tr. p. 12. If Baker did not answer Moore right away, "he would start calling [her] names and just saying really nasty things." Tr. p. 12. Moore also threatened to come to wherever Baker was at the time, something he did several times.

[5]     On July 8, 2015, Baker was working at Merle Norman Cosmetics when Moore sent her a text message indicating that he was coming to see her. Although Baker responded that Moore was not allowed at her workplace, Moore indicated that he was coming nevertheless. Moore, accompanied by his eleven-year-old son from a previous relationship, arrived when Baker was on the telephone with a customer and began following her around and "getting in [her] face[.]" Tr. p. 8. Moore was "storming around [and] just cussing in front of a client[.]" Tr. p. 8. Baker asked Moore to leave at least five times to no avail, and she finally locked herself in the bathroom while the owner of the store called police. Moore had been in the store for twenty to thirty minutes. After leaving, Moore took his son to Baker's step-grandmother's house and began banging on the door.

[6]     Also on July 8, 2015, Baker filed for an *ex parte* order for protection against Moore, which the trial court granted. On July 14, 2015, the trial court transferred the order for protection matter to Allen Circuit Court for further

proceedings consistent with cause number 02C01-1507-JP-518, the paternity case involving Baker and Moore's son. On August 12 and 14, 2015, the trial court held an evidentiary hearing on the requested order for protection. On September 29, 2015, the trial court entered an order for protection, finding and ordering that

> f. [Moore] presents a credible threat to the safety of [Baker] or a member of [Baker's] household.
> g. [Baker] has shown, by a preponderance of the evidence, that domestic or family violence, a sex offense, or stalking has occurred sufficiently to justify the issuance of this Order.
> ….
> 1. [Moore] is hereby enjoined from threatening to commit or committing acts of domestic or family violence, stalking, or sex offenses against [Baker.]
> 2. [Moore] is prohibited from harassing, annoying, telephoning, contacting, or directly or indirectly communicating with [Baker].
> ….
> THIS ORDER FOR PROTECTION EXPIRES:
> ON THE 29th DAY OF September, 2017.

Order pp. 2-3.

# Discussion and Decision

Moore contends that Baker presented insufficient evidence to sustain the order of protection issued by the trial court. Initially, we note Baker did not file an Appellee's Brief. When the appellee fails to file a brief, we need not undertake the burden of developing an argument for the appellee. *Trinity Homes, LLC v. Fang*, 848 N.E.2d 1065, 1068 (Ind. 2006). Rather, we will reverse the trial court's judgment if the appellant presents a case of prima facie error. *Id.*

"Prima facie error in this context is defined as, at first sight, on first appearance, or on the face of it." *Id.* (quotation omitted). Where an appellant does not meet this burden, we will affirm. *Id.*

[8] In reviewing the sufficiency of the evidence to support an order for protection, we neither reweigh the evidence nor judge the credibility of witnesses. *A.S. v. T.H.*, 920 N.E.2d 803, 806 (Ind. Ct. App. 2010). We consider only the probative evidence and reasonable inferences supporting the trial court's judgment. *Id.*

[9] Baker requested and the trial court entered its order under the Civil Protection Order Act ("CPOA"), codified at Indiana Code chapter 34-26-5. Under the CPOA,

> [a] person who is or has been a victim of domestic or family violence may file a petition for an order for protection against a: (1) family or household member who commits an act of domestic or family violence; or (2) person who has committed stalking under [Indiana Code section] 35-45-10-5 or a sex offense under [Indiana Code chapter] 35-42-4 against the petitioner.

Ind. Code § 34-26-5-2(a).

[10] The trial court may issue or modify an order for protection only upon a finding "that domestic or family violence has occurred." Ind. Code §§ 34-26-5-9(a), (f). The definition of "domestic or family violence" for this purpose also includes stalking as defined in Indiana Code section 35-45-10-1 or a sex offense, "whether or not the stalking or sex offense is committed by a family or

household member." Ind. Code § 34-6-2-34.5. Thus, the CPOA authorizes issuance of an order for protection only where a petitioner shows violence by a family or household member, stalking, or a sex offense has occurred. *See Parkhurst v. Van Winkle*, 786 N.E.2d 1159, 1161-62 (Ind. Ct. App. 2003). Baker's petition for an order for protection alleged she was a victim of stalking, and the trial court's order so found.

[11] Stalking is defined as "a knowing or an intentional course of conduct involving repeated or continuing harassment of another person that would cause a reasonable person to feel terrorized, frightened, intimidated, or threatened and that actually causes the victim to feel terrorized, frightened, intimidated, or threatened." Ind. Code § 35-45-10-1. "Harassment" in turn is defined as "conduct directed toward a victim that includes but is not limited to repeated or continuing impermissible contact that would cause a reasonable person to suffer emotional distress and that actually causes the victim to suffer emotional distress." Ind. Code § 35-45-10-2. "Impermissible contact" is contact that "includes but is not limited to knowingly or intentionally following or pursuing the victim." Ind. Code § 35-45-10-3. "[T]he term 'repeated' in Indiana's anti-stalking law means 'more than once.'" *Johnson v. State*, 721 N.E.2d 327, 332-33 (Ind. Ct. App. 1999), *trans. denied*.

[12] We conclude that the record here supports a finding of stalking. Baker presented evidence that Moore came to where she was located (or where he apparently believed her to be located) several times, including the separate incidents at her rented home, her step-grandmother's home, and her workplace,

from which Moore had already been told he was banned. This evidence is sufficient to establish an intentional course of conduct involving repeated or continuing harassment of Baker.

[13] Moreover, the record contains evidence that Baker felt terrorized, frightened, intimidated, or threatened by Moore's actions. Baker locked herself in the bathroom at her rented home and her workplace when Moore pursued her there, indicating that she, in fact, felt terrorized, frightened, intimidated, and/or threatened. At her rented home, Moore falsely identified himself as a police officer and banged on windows all over the house with sufficient force to break one of them. At Merle Norman, Moore began following Baker around and "getting in [her] face[.]" Tr. p. 8. Moore was "storming around [and] just cussing in front of a client[.]" Tr. p. 8. Moore was in the store for twenty to thirty minutes. We have little trouble concluding that a reasonable person would feel terrorized, frightened, intimidated, and/or threatened by Moore's aggressive and violent behavior.

[14] Moore contends that Baker's actions in allowing him parenting time with their son undermines any claim that she felt threatened by his actions. Baker, however, testified that she was seeking the order of protection for her safety and did not believe that Moore would harm their son. Moore's argument is nothing

more than an invitation to reweigh the evidence, which we will not do.[1]  Moore has failed to carry his burden to show that the order for protection is not supported by sufficient evidence.

[15]     The judgment of the trial court is affirmed.


Pyle, J., and Altice, J., concur.

---

[1] Moore also argues, without citation to authority, that the trial court abused its discretion in admitting certain text messages he sent to Baker in May and/or June of 2015.  We need not address Moore's argument, however, as the record contains sufficient evidence to sustain the trial court's order without considering the text messages.