**Dustin NEFF, Appellant–Defendant,**

**v.**

**STATE of Indiana, Appellee–Plaintiff.**

**No. 29A02–0904–CR–332.**

Court of Appeals of Indiana.

Nov. 3, 2009.

---

Steven Stoesz, Stoesz & Stoesz, West-field, IN, Attorney for Appellant.

Gregory F. Zoeller, Attorney General of Indiana, Karl Scharnberg, Deputy Attorney General, Indianapolis, IN, Attorneys for appellee.

## OPINION

BARNES, Judge.

### Case Summary[1]

Dustin Neff appeals his conviction for one count of Class C felony child solicitation. We reverse and remand.

### Issues

The issues before us are:

I. whether there is sufficient evidence to support Neff's child solicitation conviction as charged by the State; and

II. whether there is sufficient evidence that proper venue for Neff's trial lay in Hamilton County.

### Facts

The evidence most favorable to the conviction is that on April 29, 2006, twenty-year-old Neff, who resided in Anderson, Madison County, logged on to Yahoo! Instant Messenger under the screen name "stud18_20022002." Ex. 5, p. 1. He initi-ated an exchange of instant messages ("IMs") with "lizzy_izzygrrl4512," whose Yahoo! profile indicated she was a twelve-year-old girl living near Indianapolis. *Id.* However, "lizzy_izzygrrl4512" was actually Monique Bedard, an adult woman living in Georgia. She volunteered for an organization called Perverted Justice, whose volunteers pose as children in Internet chat rooms and endeavor to snare adults attempting to prey on children.

During the April 29, 2006 online chat, Neff asked for pictures of "Lizzy" (Bedard). He then asked if "Lizzy" would want to meet "somewhere we could hangout talk...." *Id.* He also said, "would u wanan [sic] kiss...." *Id.* Finally, using graphic language he indicated that he wanted to have sexual intercourse with "Lizzy." "Lizzy" indicated that she might be willing to meet Neff sometime in the next week.

On May 1, 2006, Neff and "Lizzy" again chatted. "Lizzy" stated that she lived in Carmel, in Hamilton County, and the two discussed meeting at a Dairy Queen in Carmel. Although Neff repeatedly asked "Lizzy" to send him more pictures of herself, there was no explicit sexual talk during this chat.

On May 2, 2006, Neff and "Lizzy" again chatted and this time finalized plans to meet at the Carmel Dairy Queen that evening, and afterwards to go to "Lizzy's" apartment while her mother was gone. Neff told "Lizzy" he would be driving a black Pontiac. "Lizzy" asked Neff, "r u gonna bring condums [sic]?," to which Neff replied "yes." *Id.* at 8. "Lizzy" also said, "im gonna get mad if u dont get in ur car n come c me ... u told me u wud." *Id.* at 10. Neff said, "i will," and "Lizzy" replied,

1. We heard oral argument in this case on October 7, 2009, at Indiana University–South Bend. We thank counsel for their able presen-tations, and the faculty and students for their hospitality.

"then do it now." *Id.* Neff later said, "Do u wanna get nude together," and asked a vulgar question regarding whether she was prepared and/or able to have sexual intercourse. *Id.*

Bedard had been in contact with Carmel Police Detective John Pirics regarding her chats with Neff and informed him of the planned meeting at the Dairy Queen. At approximately 8:20 p.m., Detective Pirics observed a black Pontiac with a Madison County plate drive into a parking lot next to the Dairy Queen, stay there for a minute or two, then drive away. Detective Pirics pulled the car over. Neff was driving. Neff admitted to police that he had driven to the Dairy Queen to meet a twelve-year-old girl he had been chatting with online.

On May 4, 2006, the State filed an information charging Neff with one count of Class C felony child solicitation, specifically alleging that the crime occurred "on or about May 2, 2006" and that it occurred in Hamilton County. App. p. 6. It also charged Neff with one count of Class B felony attempted child molesting, but the State later dismissed this charge. Neff waived his right to a jury trial, and a bench trial was held on December 2, 2008. During closing argument, Neff for the first time argued that Hamilton County lacked venue over the case. The Hamilton Superior Court disagreed and found Neff guilty of Class C felony child solicitation. Neff now appeals.

### Analysis

#### I. *General Sufficiency of the Evidence*

 Neff's first argument is a general challenge to the sufficiency of the evidence supporting his conviction, although he also seems to make arguments regarding the adequacy of the charging information and an alleged variance between the information and proof at trial. When reviewing the sufficiency of the evidence to support a conviction, an appellate court considers only the probative evidence and reasonable inferences supporting the verdict. *Drane v. State*, 867 N.E.2d 144, 146 (Ind.2007). It is the fact-finder's role, not an appellate court's, to assess witness credibility and weigh the evidence to determine whether it is sufficient to support a conviction. *Id.* To preserve this structure, we must consider conflicting evidence in a light most favorable to the conviction. *Id.* This court will affirm the conviction unless no reasonable fact-finder could find the elements of the crime proven beyond a reasonable doubt. *Id.*

The information in this case alleged that "on or about May 2, 2006" Neff "did, being at least eighteen years of age, knowingly solicit Monique Bedard, an individual whom the defendant believed to be a child under fourteen (14) years of age to engage in sexual intercourse; said act having been committed by using a computer network." App. p. 6. The statute the information cited was Indiana Code Section 35–42–4–6(b)(3). As noted by Neff, this particular subsection of the child solicitation statute criminalizes soliciting "any fondling or touching intended to arouse or satisfy the sexual desires of either the child or the older person ...." Indiana Code Section 35–42–4–6(b)(1) is the subsection that criminalizes the solicitation of sexual intercourse.

 A charging information must cite "the statutory provision alleged to have been violated, except that any failure to include such a citation or any error in such a citation does not constitute grounds for reversal of a conviction where the defendant was not otherwise misled as to the nature of the charges against the defendant...." Ind.Code § 35–34–1–2(a)(3). We conclude Neff has waived any argument regarding this discrepancy, which is

readily apparent on the face of the information, by never moving to dismiss the information. Indiana Code Section 35–34–1–4(a)(1), combined with Indiana Code Section 35–34–1–6(a)(1), permits dismissal of an information that is defective because it does not "substantially conform" to the requirements of Indiana Code Section 35–34–1–2. Generally, a failure to challenge a defective charging information by way of a motion to dismiss before the trial court waives any such challenge on appeal. *Lampitok v. State*, 817 N.E.2d 630, 636 (Ind.Ct.App.2004), *trans. denied.* If Neff was in any way confused by the discrepancy between the statutory citation and the specific language of the charging information, that discrepancy should have been brought to the attention of the trial court at the earliest opportunity.

 On the merits of the case against Neff, he contends the State failed to prove that he solicited "Lizzy," either to have sexual intercourse or engage in fondling, during the May 2, 2006 IM chat. The child solicitation statute defines "solicit" as "to command, authorize, urge, incite, request, or advise...." I.C. § 35–42–4–6(a). On May 2, 2006, the only two comments Neff made of an explicitly sexual nature were him asking "Lizzy," "Do u wanan [sic] get nude," and asking "U sure u can take a big c* *k[?]" Ex. 5, p. 10. Neff notes that he made these statements only after "Lizzy" first asked if he was "gonna bring condums [sic]," and urging him to drive to Carmel and meet her. *Id.* at 8.

Neff is mistaken in relying only upon the contents of the May 2, 2006 chat in isolation in arguing that there is insufficient evidence to support his conviction.

The charging information alleged that solicitation occurred "on *or about* May 2, 2006," and that this permitted the prosecution to rely on the contents of the April 29, 2006 chat as well. App. p. 6 (emphasis added). During that chat, "Lizzy" asked Neff, "wat wud we do" if they met, and Neff responded "would u wanan [sic] kiss." Ex. 5, p. 1. Neff later stated, "i wanna do more than that ... feel your p* * *y and t* *s," and later, "I wanna spread your legs and stick my d* *k in your p* * *y .... i will stop if it hurts." *Id.* at 2–3. Neff and "Lizzy" also discussed the possibility of meeting in person, and Neff asked "Lizzy" if she could send him some "sexy" pictures of herself. *Id.* at 3.

 The content of the April 29, 2006 chat clearly is sufficient evidence of child solicitation; Neff does not directly argue otherwise. He may be implying that the trial court as fact finder was required to only consider evidence related to the May 2, 2006 chat, and that for the State to present and rely upon the April 29, 2006 chat constituted an improper variance from the charging information. "A variance is an essential difference between proof and pleading." *Reinhardt v. State*, 881 N.E.2d 15, 17 (Ind.Ct.App.2008). A variance is fatal if the defendant is misled by the charge in the preparation and maintenance of his or her defense, and he or she was harmed or prejudiced as a result. *Id.* As a general rule, failure to make a specific objection at trial waives any material variance issue. *Id.* At trial, Neff did not object to the State presenting evidence of and relying almost exclusively upon the April 29, 2006 chat as proof of child solicitation.[2]

2. During closing argument, the prosecutor stated, "it's our contention that the crime was committed during that chat that happened on April 29." Tr. p. 105. Defense counsel in response argued that the State failed to prove venue, and that there was insufficient evidence Neff actually believed he was chatting with a twelve-year-old girl rather than engaging in an Internet fantasy.

Regardless of whether Neff objected, when time is not an element of a crime, or "of the essence of the offense," the State is only required to prove that the offense occurred any time within the statutory period of limitations; the State is not required to prove the offense occurred on the precise date alleged in an information. *Poe v. State*, 775 N.E.2d 681, 686 (Ind.Ct. App.2002), *trans. denied.* When an information alleges that an offense occurred "on or about" a certain date, the State is not limited to presenting evidence of events that occurred on that particular date when time is not an element of the offense. *See id.* Additionally, Indiana Code Section 35–34–1–2(a)(5) provides only that an information must state "the date of the offense with sufficient particularity to show that the offense was committed within the period of limitations applicable to that offense . . . ."

The State in this case clearly could have more precisely alleged that the child solicitation occurred on April 29, 2006, as well as or even instead of May 2, 2006. Nevertheless, the precise date of the alleged solicitation is not of "the essence of the offense" of child solicitation, nor was Neff misled into believing that the State would not present or rely upon evidence related to the April 29, 2006 chat. As such, there was no fatal variance between the charging information and proof at trial with respect to the precise dates upon which Neff solicited "Lizzy."

## II. Venue

Neff also contends the State failed to prove that proper venue existed in Hamilton County, since all of the IM chats occurred between him at his computer in Madison County and Bedard, who was in Georgia. The State contends that Neff's traveling to Hamilton County, in accordance with his and "Lizzy's" plans, establishes venue there. A defendant has a constitutional and statutory right to be tried in the county in which an offense allegedly was committed. *Baugh v. State*, 801 N.E.2d 629, 631 (Ind.2004). Venue is not an element of the offense, however, and the State may establish venue by a preponderance of the evidence and need not be prove it beyond a reasonable doubt. *Id.* The standard of review for a claim that the evidence was insufficient to prove venue is the same as for other claims of insufficient evidence. *Campbell v. State*, 500 N.E.2d 174, 178 (Ind.1986).[3] That is, "we do not weigh the evidence nor resolve questions of credibility, but look to the evidence and reasonable inferences therefrom which support the conclusion of requisite venue." *Morris v. State*, 274 Ind. 161, 163, 409 N.E.2d 608, 610(1980).

Article 1, Section 13 of the Indiana Constitution states in part: "In all criminal prosecutions, the accused shall have the right to a public trial, by an impartial jury, in the county in which the offense shall have been committed. . . ." Indiana's venue statute provides:

(a) Criminal actions shall be tried in the county where the offense was committed, except as otherwise provided by law.

(b) If a person committing an offense upon the person of another is located in one (1) county and the person's victim is located in another county at the time of

---

3. The State contends Neff waived any challenge to venue by not raising the issue until his closing argument. As the State acknowledges, however, our supreme court, citing Indiana Code Section 35–32–2–5(a), has noted that venue may be challenged at any time before a verdict or guilty finding. *See Wurster v. State*, 715 N.E.2d 341, 348 (Ind.1999). Additionally, although *Wurster* held that a challenge to venue *may* be made by pretrial motion, it did not say that it *must* be challenged in a pretrial motion.

the commission of the offense, the trial may be in either of the counties.

(c) If the offense involves killing or causing the death of another human being, the trial may be in the county in which the:

(1) cause of death is inflicted;

(2) death occurs; or

(3) victim's body is found.

(d) If an offense is committed in Indiana and it cannot readily be determined in which county the offense was committed, trial may be in any county in which an act was committed in furtherance of the offense.

(e) If an offense is commenced outside Indiana and completed within Indiana, the offender may be tried in any county where any act in furtherance of the offense occurred.

(f) If an offense commenced inside Indiana is completed outside Indiana, the offender shall be tried in any county where an act in furtherance of the offense occurred.

(g) If an offense is committed on the portions of the Ohio or Wabash Rivers where they form a part of the boundaries of this state, trial may be in the county that is adjacent to the river and whose boundaries, if projected across the river, would include the place where the offense was committed.

(h) If an offense is committed at a place which is on or near a common boundary which is shared by two (2) or more counties and it cannot be readily determined where the offense was committed, then the trial may be in any county sharing the common boundary.

(i) If an offense is committed on a public highway (as defined in IC 9–25–2–4) that runs on and along a common boundary shared by two (2) or more counties, the trial may be held in any county sharing the common boundary.

(j) If an offense is committed by use of the Internet or another computer network (as defined in IC 35–43–2–3), the trial may be held in any county:

(1) from which or to which access to the Internet or other computer network was made; or

(2) in which any computer, computer data, computer software, or computer network that was used to access the Internet or other computer network is located.

(k) If an offense:

(1) is committed by use of:

(A) the Internet or another computer network (as defined in IC 35–43–2–3); or

(B) another form of electronic communication; and

(2) occurs outside Indiana and the victim of the offense resides in Indiana at the time of the offense;

the trial may be held in the county where the victim resides at the time of the offense.

I.C. § 35–32–2–1.

 "Venue is not limited to the place where the defendant acted." *Baugh,* 801 N.E.2d at 631. Rather, concurrent venue in more than one county may exist when elements of the crime are committed in more than one county. *Id.* at 631–32. In *Baugh,* our supreme court noted that the county venue requirement originated to provide defendants with easy access to the place of their trial in the days before automobiles. *See id.* at 632. The *Baugh* opinion also states that venue may lie in any county "whose citizens were endangered" by a defendant's conduct. *Id.*

The case that is the closet to being on point to this case is *Laughner v. State,* 769 N.E.2d 1147 (Ind.Ct.App.2002), *trans. de-*

*nied, cert. denied, abrogated on other grounds by Fajardo v. State,* 859 N.E.2d 1201 (Ind.2007). In *Laughner,* the defendant was in Marion County and sent sexually explicit IMs to a police detective located in Vanderburgh County, and who was portraying himself as a thirteen-year-old child living in Vanderburgh County. The defendant eventually drove to Vanderburgh County for a pre-arranged meeting with the "child" that he had been chatting with online. The defendant was arrested, tried, and convicted for attempted child solicitation in Vanderburgh County.[4]

On appeal the defendant argued that the State failed to prove that venue in Vanderburgh County was proper, rather than in Marion County.[5] We disagreed, finding it critical that the defendant, by sending the IMs to someone in Vanderburgh County, had taken "action directed at" Vanderburgh County. *Laughner,* 769 N.E.2d at 1157 (quoting *Wurster v. State,* 715 N.E.2d 341, 350 (Ind.1999)). This court continued, "Further showing 'action directed at' Vanderburgh County are the facts that he (1) arranged a meeting in Evansville in furtherance of the attempt that was the subject of the conversation, and (2) did immediately travel to that county." *Id.*

Here, unlike in *Laughner,* Neff did not send any IMs directed to any person actually existing in Hamilton County, although

he believed "Lizzy" lived there. As in *Laughner,* Neff did arrange a meeting in Hamilton County and drove there in accordance with the plan. We do not believe, however, that the *Laughner* panel would have found venue in Vanderburgh County for attempted child solicitation if not for the crucial fact that the defendant had sent IMs to an actual person in that county. That crucial and determinative fact is missing here.

 We further observe that "the crime of child solicitation is completed at the time of the utterance." *LaRose v. State,* 820 N.E.2d 727, 732 (Ind.Ct.App. 2005), *trans. denied.* There need not be any attempt to carry out the solicited act at any time in the immediate future. *Id.* That means that in the present case, Neff completed all the conduct that was required to establish the crime of child solicitation when he sat at his computer in Madison County and typed vulgar messages that were sent to and received by someone in Georgia. Although venue for a chain of criminal events may lay in any county in which any of the events occurred, *see, e.g., Davis v. State,* 520 N.E.2d 1271, 1273 (Ind.1988), Neff did not engage in any conduct in furtherance of child solicitation in Hamilton County.[6] To the extent the trial court concluded that Neff did commit an act in furtherance of child solic-

---

**4.** The State in *Laughner* charged the crime as *attempted* child solicitation because the statute at the time was worded such that the victim had to be an actual child under fourteen years old in order for the crime to be completed. The statute was amended in 2002 to include the current language allowing a child solicitation conviction if the defendant solicits "an individual the person believes to be a child under fourteen (14) years of age...." *See* P.L. 118-2002 § 2.

**5.** Subsections (j) and (k) of the venue statute, referring to crimes committed through the Internet or another computer network, were

added in 2005, after *Laughner* was decided. Notably, it appears that under these portions of the venue statute, venue in Neff's case was established only in Madison County, not Hamilton County. The trial court here found that venue existed in Hamilton County under subsection (f).

**6.** Such conduct might have been relevant to a charge of attempted child molesting, which the State originally did bring against Neff but which was dismissed apparently because the trial court found probable cause lacking for that charge.

itation in Hamilton County, and thus venue there was proper under Indiana Code Section 35–32–2–1(f), it erred.

That Neff eventually was apprehended in Hamilton County by that county's law enforcement is not sufficient to support venue there. A similar case is *Crowder v. State*, 398 N.E.2d 1352 (Ind.Ct.App.1980). There, a defendant was convicted in Posey County of possession of marijuana after he was pulled over in that county, and the officer smelled marijuana and found a passenger to be in possession of marijuana. However, the only evidence that the defendant (as opposed to the passenger) had possessed marijuana was that he had smoked a "joint" while the vehicle was still in Vanderburgh County. This court held that only Vanderburgh County, not Posey County, had venue to try the defendant for possession of marijuana. *Crowder*, 398 N.E.2d at 1355. Here, likewise, although Neff was apprehended in Hamilton County and some evidence that he had committed child solicitation might have been gathered there, he committed no criminal acts in that county.

As a policy matter, we recognize, as our supreme court has pointed out, that the constitutional venue requirement at least originally was based in part on transportation concerns in the days before automobiles. *See Baugh*, 801 N.E.2d at 632; *see also U.S. v. Cores*, 356 U.S. 405, 410, 78 S.Ct. 875, 879, 2 L.Ed.2d 873 (1958) (noting that general policy of venue provisions is to relieve criminal defendants "of the inconvenience incident to prosecution in a district far removed from his residence"). Here, Madison and Hamilton Counties are adjacent, and transportation issues arguably would not have been a major problem for Neff. However, venue in Lake, Vanderburgh, or Floyd counties would have presented considerable travel problems. Nonetheless, under the State's view, Be-dard (in cooperation with law enforcement officials in Indiana) could have arbitrarily picked Gary, Evansville, or New Albany as "Lizzy's" hometown.

Aside from transportation issues, the State's view would permit it to engage in "forum shopping." That is, in order to obtain a trial before a prosecutor, trial court, and/or potential jury pool that law enforcement believes would be "harsher" on criminal defendants, the State could direct Perverted Justice or other out-of-state volunteers to make their child "victim" a resident of whatever county they wished. This would be improper. *See Travis v. U.S.*, 364 U.S. 631, 634, 81 S.Ct. 358, 360, 5 L.Ed.2d 340 (1961) (holding that statutory venue provisions "should not be so freely construed as to give the Government the choice of 'a tribunal favorable' to it").

For all these reasons, we conclude the State failed to present sufficient evidence that proper venue for Neff's prosecution lay in Hamilton County. Madison County is the only county in Indiana where venue would be proper. Having reached that conclusion, we turn to the question of whether Neff can be retried in Madison County for this offense if the prosecutor in that county so chooses. Neither party addressed this question in their briefs, but we did explore the issue at oral argument and we must address it.

Our research has revealed that in *Williams v. State*, 634 N.E.2d 849 (Ind.Ct. App.1994), a panel of this court addressed a case where a trial court entered judgment on the evidence, after the State's presentation of evidence, in favor of the defendant based on alleged lack of proof of proper venue. This court treated the judgment on the evidence as an acquittal for double jeopardy purposes and held that the defendant "may not now be retried." *Williams*, 634 N.E.2d at 853; *see also*

*Elkins v. State,* 754 N.E.2d 643, 644–45 (Ind.Ct.App.2001) (citing *Williams* for proposition that double jeopardy precluded State from attempting to present additional evidence to establish venue after trial court entered directed verdict in defendant's favor), *trans. denied.* Additionally, we held the trial court erred in refusing to dismiss those counts of the information for which venue was lacking. *Williams,* 634 N.E.2d at 853.

*Williams* has never been explicitly questioned or overruled. However, it arguably is inconsistent with *Wurster.* In that case, our supreme court held that a challenge to the venue of a criminal prosecution could be raised by pretrial motion. *Wurster,* 715 N.E.2d at 348. It went on to state, however, that a proper motion would be "a motion to transfer [to a different county] rather than a motion to dismiss." *Id.* It also stated, "concerns for judicial economy and fairness dictate that defendants should be permitted to challenge venue in a pretrial motion.... In the vast majority of cases, a challenge to venue at an early stage will serve not only the interests of the parties but also those of judicial economy." *Id.* at 348–49. All of this language suggests it is preferable for defendants to challenge venue before trial, with the result of a successful challenge being transfer to the proper county, not dismissal of the charges. If waiting until after trial to make a claim of insufficient venue results in acquittal and a double jeopardy bar on retrial, however, it begs the question of why a defendant would ever choose to

make a pretrial challenge to venue. The vagaries of when a defendant chooses to challenge venue should not determine whether he or she can completely escape prosecution for a crime.

We also conclude that permitting retrial of a defendant in the proper county after the State failed to prove venue in another county is consistent with double jeopardy jurisprudence.[7] Double jeopardy considerations protect against (1) reprosecution for the same offense after an acquittal; (2) reprosecution for the same offense after conviction; and (3) multiple punishments for the same offense. *Laux v. State,* 821 N.E.2d 816, 819 (Ind.2005). Additionally, if an appellate court reverses a conviction due to insufficient evidence, it amounts to an "acquittal" for double jeopardy purposes and the defendant cannot be retried. *Tibbs v. Florida,* 457 U.S. 31, 41, 102 S.Ct. 2211, 2218, 72 L.Ed.2d 652 (1982). Conversely, if an appellate court reverses a conviction due to legal error in the proceedings, there is no double jeopardy bar on a retrial. *Lockhart v. Nelson,* 488 U.S. 33, 38, 109 S.Ct. 285, 289, 102 L.Ed.2d 265 (1988). A reversal based on trial error, as opposed to insufficient evidence, "implies nothing with respect to the guilt or innocence of the defendant." *Burks v. U.S.,* 437 U.S. 1, 15, 98 S.Ct. 2141, 2149, 57 L.Ed.2d 1 (1978).

The question here, then, is whether our reversal of Neff's conviction due to improper venue is an acquittal based upon

---

7. The Fifth Amendment to the United States Constitution states in part, "nor shall any person be subject for the same offence to be twice put in jeopardy of life or limb...." Article 1, Section 14 of the Indiana Constitution states in part, "No person shall be put in jeopardy twice for the same offense." Our supreme court has outlined some differences between federal and state double jeopardy jurisprudence. *See Richardson v. State,* 717

N.E.2d 32 (Ind.1999). *Richardson,* however, focused primarily on the issue of multiple punishments for the same offense in a single proceeding. It is not clear that there is or should be any significant difference between federal and state double jeopardy law on the question before us, namely whether a defendant can be retried following reversal of a conviction on appeal.

insufficient evidence or a reversal based on legal error for double jeopardy purposes. We conclude it is the latter. An acquittal is a ruling that "actually represents a resolution, correct or not, of some or all of the factual elements of the offense charged." *U.S. v. Martin Linen Supply Co.,* 430 U.S. 564, 571, 97 S.Ct. 1349, 1354–55, 51 L.Ed.2d 642 (1977). Venue is not an "element" of a crime. *Baugh,* 801 N.E.2d at 631. The State's failure here to prove venue in Hamilton County was not a failure to prove an element of the offense and "implies nothing" with respect to Neff's guilt or innocence. *See Burks,* 437 U.S. at 15, 98 S.Ct. at 2149. As such, we conclude Neff may be retried in Madison County. To the extent *Williams* and *Elkins* would suggest otherwise, we decline to follow them.

### Conclusion

There is sufficient evidence that Neff committed Class C felony child solicitation. However, there is insufficient evidence that he committed that crime in Hamilton County. We reverse his conviction because of improper venue and remand with directions that this case be transferred to Madison County for further proceedings consistent with this opinion.

Reversed and remanded.

CRONE, J., and BRADFORD, J., concur.