## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Feb 03 2015, 8:18 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT

Steven E. Ripstra
Ripstra Law Office
Jasper, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Jodi Kathryn Stein
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Mark A. Kimmel,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff*

February 3, 2015

Court of Appeals Cause No.
51A05-1407-CR-351

Appeal from the Martin Circuit Court
Honorable Lynne El. Ellis, Judge
Cause No. 51C01-1101-FD-003

**Friedlander, Judge.**

[1]     Mark A. Kimmel (Kimmel) appeals his conviction of Theft,[1] a class D felony, presenting the following restated issues for review:

---

[1] The version of the governing statute, i.e., Ind. Code Ann. § 35-43-4-2(a) (West, Westlaw 2013), in effect at the time this offense was committed classified it as a class D felony. This statute has since been revised and

1. Must the conviction be reversed because there was a fatal variance between the allegations in the charging information and the evidence adduced at trial?

2. Was the evidence sufficient to support the judgment?

[2] We affirm.

[3] The facts favorable to the conviction are that brothers Tom and Jeff Kimmel owned and operated Indian Creek Stone Products (Indian Creek), which sold dimensional stone, sandstone, and veneer to individuals and contractors. The company's sole purpose was to quarry and sell stone. It had a long-standing policy not to compete with its contractor customers and thus did not engage in installation work. Kimmel, who was the cousin of Tom and Jeff, worked as Indian Creek's sales manager. Before he was employed by Indian Creek and several times during his employment, Kimmel was told by Tom that he (Kimmel) was not permitted to engage in any installation work with Indian Creek's stone, although Kimmel repeatedly expressed an interest in doing such work.

[4] In 2007, Tom received a call from Jim Sherman, who owned a residence in Bloomington, Indiana. Sherman was upset because he claimed Indian Creek had done a poor job of the stone installation on the exterior of his residence. Tom drove to the residence and inspected the installation. He recognized the stone as having come from Indian Creek's quarry and described the installation

in its current form reclassifies this as a Level 6 felony. *See* I.C. § 35-43-4-2(a)(1)(A) (West, Westlaw current with all 2014 Public Laws of the Second Regular Session and Second Regular Technical Session of the 118th General Assembly). The new classification, however, applies only to offenses committed on or after July 1, 2014. *See id.* Because this offense was committed before this date, it retains the former classification.

job as follows: "Mortar smeared all [sic], it looked like monkeys had laid it. There was mortal [sic] all over all of the windows. Uh, we walked around the house, uh, it was, it was the worse [sic] mess that I have ever seen in my life." *Transcript* at 90-91. Tom informed Sherman that Indian Creek did not do installation work, but Sherman insisted that Indian Creek had indeed done the installation. At that point, Tom suspected that Kimmel was involved in the substandard installation.

[5] Several days later, Tom confronted Kimmel about the situation, and Kimmel denied knowing anything about it. When Tom informed Kimmel that he had been to the Sherman residence, however, Kimmel confessed to knowledge about the installation. Kimmel admitted he had been partially paid for doing the installation and claimed that he planned to pay Indian Creek for the stone. Tom asked where the money was and Kimmel admitted that he had spent it. Kimmel was then fired. Later, office manager Staci Kimmel found invoices for the Sherman installation on Kimmel's desk, in his handwriting. She also found a notebook entry in which Kimmel essentially admitted stealing from Indian Creek. Further investigation revealed that Kimmel had intercepted the delivery invoice from driver Kevin Elliott before the paperwork was delivered to the office. This was contrary to normal business practices. Kimmel never paid Indian Creek for the stone he had removed from the yard and used for the Sherman installation.

[6] In January 2011, the State charged Kimmel with class D felony theft and the matter proceeded to trial in June 2014. A jury found Kimmel guilty as charged

and the trial court sentenced him to two years, with one year executed and one year suspended to probation. Kimmel was also ordered to pay restitution.

1.

[7] Kimmel first argues that his conviction must be reversed because there was a fatal variance between the charging information and the evidence adduced at trial. Specifically, he notes that the State had evidence of the specific dates of this offense but did not present it. Moreover, the charging information alleged that the crime occurred over a thirty-month period ("between June 1, 2007 and December 14, 2009"), *Appellant's Appendix* at 12, whereas the State's proof showed only that the acts occurred sometime in 2007.

[8] "A variance is an essential difference between proof and pleading." *Neff v. State*, 915 N.E.2d 1026, 1031-32 (Ind. Ct. App. 2009), *adhered to on reh'g,* 922 N.E.2d 44 (2010) (quoting *Reinhardt v. State,* 881 N.E.2d 15, 17 (Ind. Ct. App. 2008)), *trans denied*. A variance is deemed fatal if the defendant is misled by the charge in the preparation and maintenance of his defense and he was harmed or prejudiced as a result. *Neff v. State*, 915 N.E.2d 1026. Generally, failure to make a specific objection at trial waives the issue of a material variance issue. *Id.* At trial, Kimmel did not object to the State's evidence on this basis. Therefore, the issue is waived.

[9] Even if it were not waived, however, Kimmel would not be entitled to reversal. When time is not an element of a crime, or of the essence of the offense, the State is required to prove only that the offense occurred any time within the

statutory period of limitations. *Id., see also* Ind. Code Ann. § 35-34-1-2(a)(5) (West, Westlaw current with all 2014 Public Laws of the 2014 Second Regular Session and Second Regular Technical Session of the 118th General Assembly) (a charging information must state "the date of the offense with sufficient particularity to show that the offense was committed within the period of limitations applicable to that offense"). Pursuant to Ind. Code Ann. § 35-41-4-2(a)(1) (West, Westlaw current with all 2014 Public Laws of the 2014 Second Regular Session and Second Regular Technical Session of the 118th General Assembly), the statute of limitations for a class D felony is five years after the commission of the offense. The evidence showed that this incident occurred in 2007. The charging information was filed in January 2011. Therefore, the information was filed within the five-year limitations period.

[10] Moreover, we discern no fatal variance between the offenses alleged in the charging instrument and the proof presented at trial. The charging instrument alleged that Kimmel exerted unauthorized control over Indian Creek products between June 1, 2007 and December 14, 2009. The probable cause affidavit provided to Kimmel during discovery reflected that the Sherman incident was the only incident alleged during that time. Kimmel makes no claim that he is vulnerable to the risk of being prosecuted for the same conduct as a result of the alleged fatal variance. Therefore, Kimmel has failed to establish either element of the *Neff* test required to establish a fatal variance.

2.

[11] Kimmel contends the evidence was not sufficient to support his conviction. He argues that (1) the sale of stone to Sherman was not unauthorized, and (2) he intended to pay Indian Creek for the stone and therefore did not intend to deprive Indian Creek of the stone's value and use. In order to establish the offense of theft as a class D felony as charged, the State was required to prove that Kimmel knowingly or intentionally exerted unauthorized control over Indian Creek property, with the intent to deprive Indian Creek of any part of its value or use. I.C. § 35-43-4-2(a). When reviewing the sufficiency of the evidence needed to support a criminal conviction, we neither reweigh evidence nor judge witness credibility. *Thang v. State*, 10 N.E.3d 1256 (Ind. 2014). We consider only "the evidence supporting the judgment and any reasonable inferences that can be drawn from such evidence." *Id.* at 1258 (quoting *Henley v. State*, 881 N.E.2d 639, 652 (Ind. 2008)). We will affirm a conviction "if there is substantial evidence of probative value supporting each element of the offense such that a reasonable trier of fact could have found the defendant guilty beyond a reasonable doubt." *Id.* A verdict of guilt may be based upon an inference that is reasonably drawn from the evidence. All inferences are viewed in a light most favorable to the conviction. *Bailey v. State*, 979 N.E.2d 133 (Ind. 2012).

[12] We begin with Kimmel's argument that the sale of stone to Sherman was not unauthorized. It is true, as Kimmel points out, that he was authorized as sales manager to sell the company's product to customers such as Sherman. The State presented evidence, however, that in this particular case Sherman paid

Kimmel personally for the stone that Sherman purchased but Kimmel did not turn that money over to Indian Creek. The evidence indicated that Kimmel was not authorized to accept payment for stone and keep such payment for himself. Such activity, i.e., accepting payment for Indian Creek's product and using the money himself, was not authorized by Indian Creek's owner, Tom Kimmel. Thus, Kimmel intentionally exerted unauthorized control over Indian Creek's property.

[13] Kimmel's second argument is that he did not intend to deprive Indian Creek of any part of the value of its property because he intended to pay Indian Creek for the stone that he sold to Sherman. Intent is a mental function. Therefore, absent a confession, it often must be proven by circumstantial evidence. *See Ritchie v. State,* 809 N.E.2d 258 (Ind. 2004), *cert. denied,* 546 U.S. 828 (2005). The fact-finder is entitled to infer intent "from a defendant's conduct and the natural and usual sequence to which such conduct logically and reasonably points." *Hightower v. State,* 866 N.E.2d 356, 368 (Ind. Ct. App. 2007) (quoting *E.H. v. State,* 764 N.E.2d 681, 683 (Ind. Ct. App. 2002), *trans. denied*), *trans. denied.* We first observe that the trial court was not required to believe Kimmel's claim that he intended to reimburse Indian Creek. *See Edgecomb v. State*, 673 N.E.2d 1185 (Ind. 1985). Indeed, Kimmel's actions in this transaction were consistent with the view that he did not intend to pay Indian Creek. He uncharacteristically intercepted the delivery driver and delivery paperwork such that the relevant Indian Creek personnel were not aware of the transaction. After receiving payment for the stone from Sherman, Kimmel took

that money and spent it on other things. As of the time of the filing of the charging information approximately four years later, Kimmel had yet to repay Indian Creek for the stone. The evidence was sufficient to prove the elements of theft.

[14] Judgment affirmed.

Kirsch, J., and Crone, J., concur.