## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Feb 22 2018, 8:45 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Megan Shipley
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Justin F. Roebel
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Tommy Mitchell, <br> *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, <br> *Appellee-Plaintiff.* | February 22, 2018 <br><br> Court of Appeals Case No. <br> 49A02-1707-CR-1566 <br><br> Appeal from the Marion Superior Court <br><br> The Honorable Christina Klineman, Judge <br><br> Trial Court Cause No. <br> 49G17-1611-F6-45335 |

**Riley, Judge.**

# STATEMENT OF THE CASE

Appellant-Defendant, Tommy Mitchell (Mitchell), appeals his convictions for domestic battery, a Level 6 felony, Ind. Code § 35-42-2-1.3(a)(1),(b)(2); and six Counts of invasion of privacy, Level 6 felonies, I.C. § 35-46-1-15.1(2),(11).

We affirm in part, reverse in part, and remand.

# ISSUES

Mitchell raises three issues on appeal, which we restate as:

(1) Whether Mitchell's multiple convictions for invasion of privacy violate double jeopardy prohibitions;

(2) Whether there is insufficient evidence to support one of Mitchell's convictions for invasion of privacy in light of a fatal variance between the charging Information and the evidence presented at trial; and

(3) Whether the trial court abused its discretion by imposing a pre-trial services fee.

# FACTS AND PROCEDURAL HISTORY

Mitchell and Precious Croom (Croom) have known each other for more than seven years and were previously involved in a romantic relationship. On December 7, 2015, Croom petitioned for and received an *ex parte* order for protection against Mitchell under Cause Number 49G16-1512-PO-040070 (PO-040070), pursuant to Indiana Code section 34-26-5-9(b). This protective order enjoined Mitchell "from threatening to commit or committing acts of domestic or family violence against [Croom]", as well as "harassing, annoying,

telephoning, contacting, or directly or indirectly communicating with [Croom]." (State's Exh. 1). The protective order was set to expire on December 7, 2017.

[5] After midnight on March 12, 2016, the Indianapolis Metropolitan Police Department responded to a report of suspicious people being present at the Beechwood Apartments in Indianapolis, Marion County, Indiana. Specifically, the officers were dispatched to Croom's apartment. While police officers were speaking with Croom, Mitchell appeared at her apartment and informed one of the officers that he had called for the police assistance. Mitchell's explanation to the police seemed questionable, so they ran his information and discovered the active protective order prohibiting him from contacting Croom.

[6] Mitchell was subsequently arrested and charged with criminal trespass as a Class A misdemeanor under Cause Number 49C01-1603-CM-009691 (CM-009691). As a condition of his release from custody pending trial, the trial court issued a no-contact order pursuant to Indiana Code section 35-33-8-3.2. The no-contact order directed that Mitchell have no contact with Croom "in person, by telephone or letter, through an intermediary, or in any other way, directly or indirectly, except through an attorney of record," including but not limited to "acts of harassment, stalking, intimidation, threats, and physical force of any kind." (State's Exh. 6). Mitchell was further ordered not to visit any location

where he "knows [Croom] to be located." (State's Exh. 6). This no-contact order remained in effect until May 2, 2017.[1]

[7]     Despite the protective order under PO-040070 and the no-contact order under CM-009691, in addition to his pending criminal trespass charge, Mitchell continued to call Croom. Croom even told him that "[y]ou know you don't supposed to be [*sic*] contactin' [*sic*] me. You need to leave me alone. I have a protection order against you." (Tr. Vol. II, p. 21). Nevertheless, on the morning of October 7, 2016, Croom awoke to the sound of banging on her front door. At the time, Croom's three minor children were asleep and also awoke to the sound. When Croom opened the door, Mitchell "was standing there yelling and screaming at [her]." (Tr. Vol. II, p. 24). Mitchell's tirade was largely centered on his belief that Croom was "f-ing somebody." (Tr. Vol. II, p. 24). The commotion at the door caused one of Croom's children to come downstairs, and Croom told Mitchell that he needed "to get away from here." (Tr. Vol. II, p. 25). "That's when [Mitchell] grabbed the door as if he was gonna [*sic*] come in, but all he did was hit me with my own screen door and it hit me in my face and my arm and he walked off still yelling and screaming." (Tr. Vol. II, p. 25). Croom stated that being hit with the door caused pain and bruising.

---

[1] On May 2, 2017, the State dismissed Mitchell's charge for criminal trespass under CM-009691.

[8] A few days later, in the early morning, Croom was awakened by the sound of a blaring horn. She looked out her window and observed Mitchell "sitting in his truck" in front of her apartment. (Tr. Vol. II, p. 29). After he succeeded in acquiring Croom's attention, Mitchell "drove off really . . . strong on [the] gas." (Tr. Vol. II, p. 29). Thereafter, Mitchell maintained "an ongoing cycle" of calling and texting Croom "all day to where [her] phone loses its battery and goes dead." (Tr. Vol. II, pp. 28, 31).

[9] On November 23, 2016, the State filed an Information, charging Mitchell with Count I, domestic battery, a Level 6 felony, I.C. § 35-42-2-1.3(a)(1),(b)(2); Count II, invasion of privacy (violating protective order under PO-040070), a Level 6 felony, I.C. § 35-46-1-15.1(2); Count III, invasion of privacy (violating no-contact order under CM-009691), a Level 6 felony, I.C. § 35-46-1-15.1(11); Count IV, domestic battery, a Class A misdemeanor, I.C. § 35-42-2-1.3(a)(1); Count V, invasion of privacy (violating protective order under PO-040070), a Level 6 felony, I.C. § 35-46-1-15.1(2); Count VI, invasion of privacy (violating no-contact order under CM-009691), a Level 6 felony, I.C. § 35-46-1-15.1(11); Count VII, invasion of privacy (violating protective order under PO-040070), a Level 6 felony, I.C. § 35-46-1-15.1(2); and Count VIII, invasion of privacy (violating no-contact order under CM-009691), Level 6 felony, I.C. § 35-46-1-15.1(11). Counts I through IV were alleged to have occurred on or about October 7, 2016; Counts V and VI were alleged to have occurred on or about October 9, 2016; and Counts VII and VIII were alleged to have occurred on or about October 10, 2016.

[10]     On May 10, 2017, the trial court conducted a bench trial. At the beginning of the trial, the trial court permitted the State, over Mitchell's objection, to amend the charging Information by adding Count IX, battery resulting in bodily injury, a Class A misdemeanor, I.C. § 35-42-2-1(c)(1). Following the State's presentation of evidence, Mitchell moved to dismiss Counts III, V, VI, VII, and VIII (*i.e.*, all but one of the charges for invasion of privacy) pursuant to Indiana Trial Rule 41(B). Mitchell argued that with the exception of the incident on October 7, 2016, the State had failed to present evidence that Mitchell violated a protective/no-contact order on the other dates alleged in the charging Information. The trial court denied Mitchell's motion. During Mitchell's case-in-chief, he admitted to regular contact with Croom because of their ongoing relationship, but he denied slamming a door in her face. Mitchell testified that he was unaware of the existence of a protective order. At the close of the evidence, the trial court found Mitchell guilty of all nine Counts.

[11]     On June 21, 2017, the trial court held a sentencing hearing. Based on double jeopardy concerns, the trial court vacated Counts IV and IX—*i.e.*, the lower-level battery charges. As to the seven remaining Level 6 felonies—one for domestic battery and six for invasion of privacy—the trial court sentenced Mitchell to concurrent terms of 910 days, entirely suspended to probation (less the four days served in jail with four days of credit time). The sentence was ordered to run consecutively to Mitchell's home detention sentence in another case. The trial court additionally ordered Mitchell to complete a twelve-week anger management course and have no contact with Croom.

Mitchell now appeals. Additional facts will be provided as necessary.

# DISCUSSION AND DECISION

## I. *Double Jeopardy*

Mitchell claims that his convictions for six Counts of invasion of privacy as Level 6 felonies violate the prohibitions against double jeopardy. A conviction for two or more offenses violates the double jeopardy clause of the Indiana Constitution "if, with respect to *either* the statutory elements of the challenged crimes *or* the actual evidence used to convict, the essential elements of one challenged offense also establish the essential elements of another challenged offense." *Calvert v. State*, 930 N.E.2d 633, 641 (Ind. Ct. App. 2010) (quoting *Richardson v. State*, 717 N.E.2d 32, 49 (Ind. 1999)). Along with constitutional double jeopardy prohibitions, "other categories of double jeopardy based on statutory construction and common law prohibit multiple convictions or punishments for the same crime." *Id.* at 642. Thus, "[c]onviction and punishment for a crime which consists of the very same act as another crime for which the defendant has been convicted and punished" cannot stand. *Id.*[2] Whether convictions violate double jeopardy is a pure question of law, which we review *de novo*. *Rexroat v. State*, 966 N.E.2d 165, 168 (Ind. Ct. App. 2012), *trans. denied*.

---

[2] Mitchell has not raised a federal double jeopardy claim.

[14]     Here, Mitchell argues that he was

> convicted of two [C]ounts of felony invasion of privacy for
> October 7[, 2016] (Counts II and III), two [C]ounts of felony
> invasion of privacy for October 9[, 2016] (Counts V and VI), and
> two [C]ounts of felony invasion of privacy for October 10[, 2016]
> (Counts VII and VIII).  For each date, Mitchell was convicted of
> both violating the protective order [under PO-040070] and
> violating the no[-]contact order [under CM-009691].  These
> double convictions for each date are convictions for the "very
> same act."

(Appellant's Br. p. 15) (internal citation omitted).

[15]     "A person who knowingly or intentionally violates . . . an ex parte protective
order issued under [Indiana Code chapter] 34-26-5" or a no-contact order issued
as a condition of pretrial release under Indiana Code section 35-33-8-3.2
"commits invasion of privacy," which is a Level 6 felony "if the person has a
prior unrelated conviction" for the same offense.  I.C. § 35-46-1-15.1(2),(11).
Thus, a violation of either the protective order or the no-contact order
constitutes a commission of the same crime.  Our court has previously
determined that it is a violation of the "actual evidence" test under the double
jeopardy clause of the Indiana Constitution to rely on the same evidence to
prove the violation of both a no-contact order and a protective order.  *Hatchett v.
State*, 33 N.E.3d 1125, 1130 (Ind. Ct. App. 2015).  Here, Mitchell points out
that for both Counts II and III, the State relied on proof that Mitchell showed
up at Croom's home and yelled at her; for Counts V and VI, the State
established that Mitchell parked outside Croom's home and blared his horn; for

Counts VII and VIII, the State provided evidence that Mitchell communicated with Croom by calling or texting her. Accordingly, Mitchell argues that he was twice-convicted for each instance of prohibited contact with Croom—once as a violation of the protective order and once as a violation of the no-contact order—contrary to double jeopardy. The State agrees with Mitchell, and so do we. We therefore reverse three of Mitchell's convictions for Level 6 felony invasion of privacy and hereby vacate Counts II, V, and VII for violations of the protective order issued under PO-040070. We remand to the trial court with instructions to reflect the vacation of these convictions in the judgment of conviction and sentencing order.

## II. *Variance in Charging Information*

[16] Mitchell also challenges his convictions for invasion of privacy because there was a fatal variance between the charging Information and the evidence introduced at the bench trial. "A variance is an essential difference between proof and pleading." *Reinhardt v. State*, 881 N.E.2d 15, 17 (Ind. Ct. App. 2008). However, not all variances require reversal; rather, "a variance is deemed fatal if the defendant is misled by the charge in the 'preparation and maintenance of his defense, [and if he was] harmed or prejudiced thereby.'" *Id.* (alterations in original). The "failure to make a specific objection at trial waives any material variance issue." *Id.*

[17] "We resolve a claim of fatal variance under our sufficiency [of evidence] standard because the defendant's essential argument is the evidence produced at trial so differed from the charging information that it was insufficient to convict

him as charged." *Blount v. State*, 22 N.E.3d 559, 565 (Ind. 2014). As such, our court does not reweigh evidence or assess the credibility of witnesses. *Id.* We will "consider and draw reasonable inferences from the evidence that supports the verdict." *Id.* We "will affirm a conviction unless no reasonable trier of fact could find every element proved beyond a reasonable doubt." *Id.*

[18] Having determined that three of the six Counts of invasion of privacy must be vacated on double jeopardy grounds, we are left with three instances of Mitchell having violated the no-contact order issued under CM-009691. According to the Information, Count III was based on conduct that occurred on or about October 7, 2016; Count VI was based on conduct that occurred on or about October 9, 2016; and Count VIII was based on conduct that occurred on or about October 10, 2016. Mitchell concedes that, in violation of his no-contact order, the State "did prove two instances of communication: the incident in which Mitchell came to Croom's apartment on October 7, 2016, and the incident in which Mitchell honked his horn outside Croom's house a 'few days' later." (Appellant's Br. p. 11) (footnotes omitted). However, as to the third instance of contact with Croom, the State alleged in the Information that Mitchell had called and texted Croom on or about October 10, 2016, but Mitchell argues that

> Croom had difficulty stating a specific date or date range for when the calls and texts were made. She testified she could not remember the events of October 9 and 10, 2016. When the [trial court] asked Croom questions in an attempt to clarify the timeline, Croom testified she had no "specific recollection" of the days following October 7, 2016. When Croom described the

calls and texts, she used the present tense: "It's all day to where my phone loses its battery and goes dead." She also testified, "He continues to call to this day; he just text [*sic*] me last night." Thus, the only specific date on which the State proved Mitchell texted Croom was May 9, 2017, the day before trial.

(Appellant's Br. p. 13) (citations omitted). Mitchell insists that "there was a variance between the charging information (which alleged communication on October 9 or 10, 2016) and the evidence presented at trial (that Mitchell called and texted Croom at some indeterminate times, including the day before trial)." (Appellant's Br. p. 13). Mitchell argues that such a variance is fatal because it leaves him "vulnerable to future prosecution under the same evidence"—*i.e.*, he "could be charged with invasion of privacy for making calls or sending texts at any point in 2016 or in the spring of 2017, and there would be no way to determine from the charging information in this case or the evidence presented at trial whether he had previously been prosecuted for the same act." (Appellant's Br. p. 14).

[19] At the outset, the State has argued that Mitchell waived any claim regarding a fatal variance by failing to object during the bench trial. Mitchell, however, argues that he properly objected by seeking dismissal under Trial Rule 41(B) following the State's case-in-chief, arguing that the State "has not presented evidence as to . . . the incident they allege on October 10th." (Tr. Vol. II, p. 33). Assuming without deciding whether Mitchell's motion for dismissal was enough to preserve the issue of fatal variance for our review, we find no error.

[20] Pursuant to Indiana Code section 35-34-1-2(a)(5), a charging information must "stat[e] the date of the offense with sufficient particularity to show that the offense was committed within the period of limitations applicable to that offense." Accordingly, our courts have previously determined that "when time is not an element of a crime, or 'of the essence of the offense,' the State is only required to prove that the offense occurred any time within the statutory period of limitations; the State is not required to prove the offense occurred on the precise date alleged in an information." *Neff v. State*, 915 N.E.2d 1026, 1032 (Ind. Ct. App. 2009), *trans. denied*. Furthermore, "[w]hen an information alleges that an offense occurred 'on or about' a certain date, the State is not limited to presenting evidence of events that occurred on that particular date when time is not an element of the offense." *Id.*

[21] In the present case, for Count VIII, the State alleged that "[o]*n or about* October 10, 2016, . . . Mitchell did knowingly violate" his no-contact order. (Appellant's Conf. App. Vol. II, p. 24) (emphasis added). In the accompanying probable cause affidavit, the investigating detective averred that Croom had reported that "Mitchell repeatedly called her phone" on October 9-10, 2016. (Appellant's Conf. App. Vol. II, p. 20). *See Woods v. State*, 980 N.E.2d 439, 443 (Ind. Ct. App. 2012) (noting that the probable cause affidavit may be considered as supplementing the details of the charging information in considering whether a defendant was properly apprised of the charges against him). Then, at trial, Croom testified that while she did not have a specific recollection of the days following the October 7, 2016 incident in which Mitchell appeared at her home

and slammed the door in her face, Mitchell's contact with her was "an ongoing cycle." (Tr. Vol. II, p. 31). When asked how, in the days following October 7th, Mitchell had contacted her, Croom replied that "[h]e has been stalking my home. He has came [*sic*] to the door, also called and texts." (Tr. Vol. II, p. 28). Croom stated that she could not "keep count" of the number of Mitchell's attempted contacts because it occurs "all day to where my phone loses its battery and goes dead." (Tr. Vol. II, p. 28). She further indicated that Mitchell's calls and texts had been a run-of-the-mill event even after the no-contact order was instituted.

[22] Time is not an element of the invasion of privacy offense. Thus, the State was not restricted to proving that Mitchell's calls occurred on the precise date alleged. Here, there is sufficient evidence to establish that Mitchell called and/or texted in violation of the protective order in close proximity to the date alleged in the charging Information. In fact, from Croom's testimony, it is clear that Mitchell attempted to contact her on an ongoing basis throughout the life of the no-contact order and specifically did so in the days following the October 7, 2016 incident at Croom's apartment. Therefore, we find no fatal variance between the charging Information (specifically, Count VIII), and the evidence adduced at trial.

### III. *Pre-Trial Fees*

[23] Finally, Mitchell challenges the trial court's imposition of a $100.00 fee for pre-trial services. A trial court's decision to impose fees is generally a matter of trial court discretion. *Bex v. State*, 952 N.E.2d 347, 354 (Ind. Ct. App. 2011), *trans.*

*denied*. As long as the trial court's imposition of fees is within statutory limits, there is no abuse of discretion. *Id.* "A defendant's indigency does not shield him from all costs or fees related to his conviction." *Id.*

[24] At a pre-trial conference on February 9, 2017, the trial court released Mitchell on his own recognizance and instructed him "to report to the probation department to get setup with pretrial services which will include drug and alcohol monitoring." (Supp. Tr. p. 13). There was no discussion of any fees associated with the pre-trial release at this hearing. On March 21, 2017, a notice of pre-trial release violation was filed based on Mitchell's failure to submit to two drug screens. According to the probation department's notice of violation, Mitchell had a $100.00 obligation, of which he had paid nothing. Mitchell reported that he did not have the money to submit to the drug screens. On March 23, 2017, the trial court found Mitchell "indigent to all future drug tests." (Appellant's Conf. App. Vol. II, p. 73). Nevertheless, in the trial court's sentencing order, it assessed a pre-trial services fee in the amount of $100.00 against Mitchell pursuant to "Indiana Code[] Sections 33-37-4-1, -4 and 33-37-5-19," with $50.00 designated for the adult probation share and $50.00 for the public defender share. (Appellant's Conf. App. Vol. II, p. 19).

[25] The parties agree that Indiana Code section 35-33-8-3.3(b) governs the imposition of pre-trial services fees in this case. This statute provides:

> If a defendant who has a prior unrelated conviction for any offense is charged with a new offense and placed under the supervision of a probation officer or pretrial services agency, the

court may order the defendant to pay the pretrial services fee . . . if:

(1) the defendant has the financial ability to pay the fee; and

(2) the court finds by clear and convincing evidence that supervision by a probation officer or pretrial services agency is necessary to ensure the:

(A) defendant's appearance in court; or

(B) physical safety of the community or of another person.

The initial pre-trial services fee may not exceed $100.00. I.C. § 35-33-8-3.3(e). "[F]ifty percent 50% of the money" must be deposited "into the county supplemental adult probation services fund and fifty percent (50%) of the money into the county supplemental public defender services fund." I.C. § 35-33-8-3.3(f).

[26] Mitchell now argues, and the State concurs, that the trial court failed to assess Mitchell's ability to pay the initial pre-trial services fee before ordering such. We agree that the record is devoid of any inquiry into Mitchell's ability to pay as plainly required by statute. Therefore, we remand to the trial court with instructions to inquire into Mitchell's ability to pay a pre-trial services fee.

## CONCLUSION

[27] Based on the foregoing, we conclude that three of Mitchell's convictions for invasion of privacy run afoul of double jeopardy, and we therefore vacate Counts II, V, and VII and remand for an adjustment to the judgment of

conviction and sentencing order. We further conclude that there was no fatal variance between Count VIII (invasion of privacy on or about October 10, 2016) and the evidence presented at trial. Finally, we conclude that the trial court failed to determine Mitchell's ability to pay prior to imposing pre-trial services fees and remand for reconsideration.

[28] Affirmed in part, reversed in part, and remanded.

[29] Baker, J. and Brown, J. concur