

I N T H E

# Court of Appeals of Indiana

Dimanione Lovelace,

*Appellant-Defendant*

v.

State of Indiana,

*Appellee-Plaintiff*



FILED

Feb 27 2026, 9:16 am

**C L E R K**
Indiana Supreme Court
Court of Appeals
and Tax Court

---

February 27, 2026

Court of Appeals Case No.
25A-CR-1353

Appeal from the Tippecanoe Superior Court

The Honorable Randy J. Williams, Judge

Trial Court Cause No.
79D01-2304-MR-3

---

**Opinion by Judge Bradford**

Judges Pyle and Kenworthy concur.

**Bradford, Judge.**

## Case Summary

[1] Dimanione Lovelace was charged with several offenses after participating in a string of robberies which ultimately ended with the murder of Anthony Holdbrook. The trial court found Lovelace guilty of felony murder, Level 5 felony conspiracy to commit robbery against Pharrell Petty, and Level 5 felony conspiracy to commit robbery against Tayshawn Anderson and imposed a firearm enhancement. The trial court imposed an aggregate sentence of seventy-two years of incarceration, with eight years suspended to probation.

[2] Lovelace contends that the trial court erred in failing to transfer the alleged offenses which had occurred in Howard County and Grant County to their respective counties. He also contends that the evidence was insufficient to support the firearm enhancement, the trial court abused its discretion in sentencing him, and his sentence was inappropriate based on the nature of the offense and his character. We affirm.

## Facts and Procedural History

[3] On January 1, 2023, while Shae Martin and Bailey Hensley were "hanging out[,]" Hensley received a message from Lovelace or Amarion Alsup requesting a ride in exchange for gas money. Tr. Vol. II p. 189. Hensley and Martin

drove to an apartment complex and picked up Lovelace, Alsup, and Corahn Browner. Lovelace had two firearms in his possession, and Alsup had at least one.

[4] Alsup directed Hensley to drive them to Kokomo Manor Apartments in Kokomo. Alsup intended "to rob" Petty at Kokomo Manor and had been texting Petty about a firearms transaction. Tr. Vol. II p. 80. When they arrived at Petty's location, Petty "c[a]me up to the car" with a firearm, Alsup said, "let me see it[,]" and Alsup and Lovelace directed Hensley to "pull off." Tr. Vol. II pp. 81–82, 148. Hensley began driving away with Petty "still hanging onto the side of [the] car," and he was dragged with the vehicle until he let go. Tr. Vol. II p. 149.

[5] Hensley and Martin dropped off the three men at Lovelace's grandfather's house. Later, Alsup messaged Hensley again about another ride for gas money. Hensley and Martin picked the men up from Lovelace's grandfather's house, made a few stops, and drove to Marion to meet with Anderson for another firearm transaction. Alsup sat in the front passenger seat while Lovelace, Martin, and Browner sat in the back seat. Alsup and Lovelace were discussing that they were "going to basically take the money from" Anderson. Tr. Vol. II p. 184.

[6] At Anderson's apartment complex in Marion, Anderson came outside to the car, provided Alsup with money, partially in cash, for the weapon, and Alsup again instructed Hensley to drive without giving Anderson the weapon.

Hensley then dropped the men off, and Alsup later asked Hensley to drive them to Lafayette. Hensley picked the men up in Kokomo and began driving to Lafayette.

[7] Alsup had been texting Holdbrook "all day" about a firearms transaction and arranged to meet Holdbrook in Lafayette. Tr. Vol. II p. 84. At some point into the drive, Hensley stopped for gas, and Lovelace drove the rest of the way to Lafayette. When they arrived, Hensley returned to the driver's seat, Alsup sat in the front passenger seat, and Lovelace sat in the back passenger seat. The men referred to what was going to happen as "a play" which Martin understood to mean "robbing people." Tr. Vol. II p. 204.

[8] Holdbrook walked out to the vehicle. Both Alsup and Lovelace had firearms in their hands. Lovelace indicated that they were not selling an ammunition magazine attached to one of the firearms, and after Alsup removed the magazine attached to the firearm and handed it to Lovelace, Lovelace attempted to take the firearm that Holdbrook was holding. Someone said, "nah, don't do that" and two shots were fired. Tr. Vol. II p. 164. After the two gunshots, Hensley "took off" and Alsup "reached out the window and shot his gun." Tr. Vol. II p. 164. Both Alsup and Lovelace admitted to shooting. Lovelace "said he d[idn't] know if he's the one who killed him or, and then [Alsup] was like, I think I did because when I shot the gun he fell down." Tr. Vol. II p. 165.

[9] On April 13, 2023, the State charged Lovelace with Count I, felony murder; Count II, felony murder; Count III, Level 2 felony conspiracy to commit robbery resulting in serious bodily injury; Count IV, Level 2 felony attempted robbery resulting in serious bodily injury; Count V, Class A misdemeanor attempted theft; Count VI, Level 5 felony conspiracy to commit robbery; Count VII, Level 5 felony robbery; Count VIII, Class A misdemeanor theft; Count IX, Level 5 felony conspiracy to commit robbery; Count X, Level 5 felony robbery; Count XI, Class A misdemeanor theft; Count XII, Class A misdemeanor unlawful carrying of a handgun; and an enhancement for unlawful use of a firearm during the commission of Counts I and II.

[10] A bench trial commenced in Tippecanoe County on March 4, 2025. The State moved to dismiss Count XII, which motion the trial court granted. At the close of trial, Lovelace argued:

> With respect to count[s] six through [eleven], they all relate to Grant and Howard County. If the court would, we can brief this. […] Venue is not an element of the crime, but it must be established by preponderance of the evidence. […] We have absolutely several hours, several hours between event one, event two, event three here in Tippecanoe County. The counties are not contiguous to one another.

Tr. Vol. III p. 23. Lovelace and the State further briefed this issue, and others, after trial.

[11] After vacating several convictions, the trial court found Lovelace guilty of: Count I, felony murder; Count VI, Level 5 felony conspiracy to commit

robbery; and Count IX, Level 5 felony conspiracy to commit robbery and imposed the firearm sentencing enhancement. On May 28, 2025, the trial court imposed consecutive sentences of fifty-six years for Count I, three years for Count VI, four years for Count IX, and nine years for the firearm sentencing enhancement. The trial court suspended one year of the sentence for Count I and suspended the sentences for Counts VI and IX, resulting in an aggregate sentence of seventy-two years of incarceration, with eight years suspended to probation.

## Discussion and Decision

### I.  Venue

Lovelace contends that the trial court "erred in failing to transfer the offenses in Howard County and Grant County to their respective counties." Appellant's Br. p. 19. Article 1, section 13 of the Indiana Constitution provides that, "[i]n all criminal prosecutions, the accused shall have the right to a public trial, by an impartial jury, in the county in which the offense shall have been committed[.]" Venue is typically "an issue for determination by the [fact-finder]." *Alkhalidi v. State*, 753 N.E.2d 625, 628 (Ind. 2001) (citation omitted). Furthermore, "[v]enue is not an element of the offense. Accordingly, although the State is required to prove venue, it may be established by a preponderance of the evidence and need not be proved beyond a reasonable doubt." *Id.* (citation omitted). The State's burden of establishing venue is met if "the facts and circumstances permit the trier of fact to infer that the crime occurred in the

given county." *Perry v. State*, 78 N.E.3d 1, 11 (Ind. Ct. App. 2017) (citation omitted).

[13] The standard of review for a claim that the evidence was insufficient to prove venue is the same as for other claims of insufficient evidence. *Neff v. State*, 915 N.E.2d 1026, 1032 (Ind. Ct. App. 2009) (citation omitted), *trans. denied*. "[W]e do not weigh the evidence nor resolve questions of credibility, but look to the evidence and reasonable inferences therefrom which support the conclusion of requisite venue." *Id.* (quotation and citation omitted). Lovelace does not dispute that the offenses charged involving Holdbrook occurred in Tippecanoe County. Instead, he contends that nothing in his case "demonstrates that the robbery in Howard County, or Grant County, continued into Tippecanoe County." Appellant's Br. p. 21.

[14] "Venue is not limited to the place where the defendant acted." *Neff*, 915 N.E.2d at 1033 (quotation and citation omitted). "If all charges are integrally related—in other words, if one thing led to another—then the crimes may be considered a single chain of events for purposes of venue." *Abran v. State*, 825 N.E.2d 384, 392 (Ind. Ct. App. 2005) (citation omitted), *trans. denied*. The facts and circumstances in this case show that the robberies and murder were part of one continuous chain of events that were integrally related. *See Dudley v. State*, 480 N.E.2d 881, 893 (Ind. 1985) (citation omitted) (providing that "cases have shown that when the various acts which comprise the crime are part of a 'single chain of events,' the charge may be brought in the county where the acts began or ended" and concluding that criminal recklessness based on appellants' acts of

exacting escape from robbery was "clearly integrally related to the robbery"), *reversed and remand on habeas corpus review on other grounds by Dudley v. Duckworth, 854 F.2d 967, 972 (7th Cir. 1988), cert. denied.*

[15] Here, Alsup, Lovelace, and their companions committed a spree of robberies, one robbery after another; Alsup had been texting Holdbrook "all day" about a firearms transaction and arranged to meet Holdbrook in Lafayette, and the group brought the gun taken from Petty in Kokomo to Lafayette when they met with Holdbrook. Tr. Vol. II p. 84. Furthermore, the robberies of Petty and Anderson were committed on the same day, relatively close in time and in the same manner, all the way until Holdbrook's murder in Lafayette. That is, Alsup had been messaging Petty and Anderson to arrange for a firearms transaction just as he had been messaging Holdbrook. The same group drove to each robbery victim, waited until each victim came to the vehicle for the transactions, and robbed them, and in Holdbrook's case, attempted to rob and ultimately killed him, and drove off. Lovelace's conspiracies to rob Petty and Anderson were committed in a chain of criminal conduct that was integrally related to the murder of Holdbrook. That Lovelace could have been tried in Grant or Howard County for the conspiracies is irrelevant.

[16] We conclude that the trial court did not err in its determination that the State had satisfied its burden to prove that venue was proper in Tippecanoe County for all of Lovelace's offenses. *See, e.g., French v. State*, 266 Ind. 276, 362 N.E.2d 834, 839 (1977) (providing that a robbery of a grocery store, abduction, sexual attack, and murder were "all integrally related" and, "for purposes of venue,

may be considered a single chain of events"); *Sells v. State*, 130 N.E.3d 1158, 1165 (Ind. Ct. App. 2019), (concluding that venue was proper in Franklin County where "Sells' delivery of methamphetamine to Craig was part of a single chain of events intended to culminate in the delivery of the methamphetamine to Wagner, and in performing those acts Craig drove through Franklin County"), *trans. denied*; *Andrews v. State*, 529 N.E.2d 360, 364 (Ind. Ct. App. 1988) (concluding that venue was proper in Noble County where defendant's actions in telling his daughter that he planned to give her a birthday present the next day, and in driving her the following day "to a secluded locale, where they had intercourse, comprise[d] a single chain of events. The conversation that occurred in Noble County between Andrews and the victim was integrally related to the incest that occurred the next day in Whitley County"), *trans. denied*. Because we conclude that the State satisfied its burden to prove that venue was proper in Tippecanoe County for Lovelace's convictions, we do not reach the issues presented related to the admission of evidence of Counts VI and IX.

## II.    Firearm Enhancement

[17]    Lovelace contends that the evidence was insufficient to support the firearm enhancement. Review of the sufficiency of the evidence to support a sentencing enhancement is the same as review of the evidence to sustain a conviction. *See Cooper v. State*, 940 N.E.2d 1210, 1213 (Ind. Ct. App. 2011), *trans. denied*. "[W]e neither reweigh the evidence nor assess witness credibility, and will focus on the evidence most favorable to the verdict together with the reasonable inferences

that may be drawn therefrom. We will affirm unless no reasonable factfinder could find the elements of the crime proved beyond a reasonable doubt." *Id.* (citation omitted).

[18] Pursuant to the firearm enhancement statute, the State is permitted to seek "an additional fixed term of imprisonment" if it "can show beyond a reasonable doubt that the person knowingly or intentionally used a firearm in the commission of the offense." Ind. Code § 35-50-2-11(d). Under the statute, an "offense" includes "a felony under IC 35-42 that resulted in death or serious bodily injury[.]" Ind. Code § 35-50-2-11(b)(1).

[19] Here, the evidence was sufficient to show that Lovelace used a firearm during the attempted robbery and murder of Holdbrook. While Lovelace suggests that he was merely in "possession" of the firearm during the offenses involving Holdbrook, Appellant's Br. p. 28, the evidence shows otherwise. When Holdbrook approached the vehicle, Lovelace had a firearm in his hands. Lovelace attempted to take the firearm that Holdbrook was holding, and two shots were fired. Both Hensley and Martin testified that, immediately after the incident, Lovelace admitted that he had fired a shot. Lovelace even "said he d[idn't] know if he's the one who killed him[.]" Tr. Vol. II p. 165. Based on the foregoing, we conclude that the evidence was sufficient to prove that

Lovelace used a firearm during the commission of the offenses involving Holdbrook.[1]

## III.  Sentencing—Abuse of Discretion

Lovelace contends that the trial court abused its discretion in sentencing him. Sentencing decisions rest within the sound discretion of the trial court and are reviewed on appeal only for abuse of discretion.  *Anglemyer v. State*, 868 N.E.2d 482, 490 (Ind. 2007), *modified on other grounds on reh'g*, 875 N.E.2d 218 (Ind. 2007).  "An abuse of discretion occurs if the decision is clearly against the logic and effect of the facts and circumstances before the court, or the reasonable, probable, and actual deductions to be drawn therefrom."  *Id.* (quotation omitted).

We review for an abuse of discretion the court's finding of aggravators and mitigators to justify a sentence, but we cannot review the relative weight assigned to those factors.  When reviewing the aggravating and mitigating circumstances identified by the trial court in its sentencing statement, we will remand only if the record does not support the reasons, or the sentencing statement omits reasons that are clearly supported by

---

[1] To the extent that Lovelace contends that he is "ineligible for the use of a firearm sentencing enhancement because accessory liability does not apply to a sentencing enhancement[,]" Appellant's Br. p. 27, he is misguided.  We have previously concluded that an accomplice's crime can be enhanced by the firearm enhancement. *See, e.g., Parker v. State*, 754 N.E.2d 614, 619 (Ind. Ct. App. 2001) ("We find Parker's admitted participation in the [robbery] in the form of providing the handgun was sufficient to constitute the use of a firearm in the commission of the offense.  The fact that Parker was not the actual shooter is irrelevant under this statute.").  Nevertheless, the evidence is more than sufficient to prove that Lovelace actually shot his firearm during the attempted robbery and the murder of Holdbrook, therefore, supporting the imposition of the firearm enhancement pursuant to Indiana Code section 35-50-2-11(d).

the record, and advanced for consideration, or the reasons given are improper as a matter of law.

*Baumholser v. State*, 62 N.E.3d 411, 416 (Ind. Ct. App. 2016) (internal citation and quotation omitted), *trans. denied*. "A single aggravating circumstance may be sufficient to enhance a sentence." *Id*. at 417. Lovelace argues that the trial court improperly considered as an aggravating circumstance that "the harm, injury, loss, or damage[] was substantial and greater than the elements necessary to prove the commission of the offense." Appellant's App. Vol. II p. 28.

[22] The trial court's corrected sentencing order provides as follows:

> The Court finds as aggravating factors [Lovelace's] juvenile and adult criminal history; repeated firearms offenses; on bond at the time of the commission of the instant offense; placed in segregation at the Tippecanoe County Jail; substance abuse history; previous attempts at rehabilitation have failed; and the harm, injury, loss, or damaged was substantial and greater than the elements necessary to prove the commission of the offense.

Appellant's App. Vol. II p. 28.

[23] "[W]hen a defendant challenges some, but not all, of the aggravating circumstances found by the trial court, we will not remand for resentencing if we can say with confidence the trial court would have imposed the same sentence had it not considered the purportedly erroneous aggravators." *Owen v. State*, 210 N.E.3d 256, 269 (Ind. 2023).

Here, the trial court identified multiple aggravating circumstances that Lovelace does not challenge, including Lovelace's history of criminal and delinquent behavior, commission of the instant offense while on pretrial release in another case, misconduct while in jail, and history of illegal drug use. Given these undisputed aggravating circumstances, we are convinced that the trial court would have imposed the same sentence for each of Lovelace's convictions and the firearm enhancement even if it had omitted the circumstance that Lovelace challenges. Any error in listing the "harm, injury, loss, or damage" of the offense was harmless in light of the other, unchallenged aggravating circumstances that the trial court identified. *See McDonald v. State*, 868 N.E.2d 1111, 1114 (Ind. 2007) (providing that "even if the trial court had erred in identifying the foregoing factors as aggravators, McDonald would not be entitled to remand for resentencing […] because McDonald does not challenge the remaining aggravating factors").

Lovelace further alleges that the trial court should have found as a mitigating circumstance that he was eighteen years old at the time of the instant offenses. In making his claim, Lovelace acknowledges that age is not a statutory mitigating circumstance but argues that it should have been a "substantial mitigating circumstance" here. Appellant's Br. p. 34. "[Y]outh is not automatically a significant mitigating circumstance. Rather, whether a defendant's youth is a significant mitigating factor is within the trial court's discretion. Moreover, if the trial court does not find youth to be a mitigator, it

is under no obligation to explain its reasoning." *Sanders v. State*, 71 N.E.3d 839, 843 (Ind. Ct. App. 2017) (quotation and citations omitted), *trans. denied*.

[26] With respect to Lovelace's age as a mitigating circumstance, during the sentencing hearing, the trial court stated, "It's hard for me to point to age. We're not talking about a fight over a ball game.[…] That's not what we're talking about youth. I just can't, it saddens me, but I just can't see it." Tr. Vol. III p. 57. The trial court did not overlook Lovelace's age when making its sentencing decision, but rather specifically declined to find his age to be a mitigating circumstance. Upon review, we observe, as the trial court did, that Lovelace had had multiple contacts with the legal system before the instant offenses and had not been deterred from engaging in criminal behavior. Lovelace was also not so young as to require the trial court to find his age significantly mitigating. *See, e.g., Monegan v. State*, 756 N.E.2d 499, 504 (Ind. 2001) (finding no error in the trial court's decision to attach "little weight" to Monegan's age, which was "less than forty days from his eighteenth birthday.").

[27] Again, we are confident that the trial court would have imposed the same sentence for each of Lovelace's convictions and firearm enhancement even if it had considered his age to be a significant mitigating circumstance. As such, we conclude that the trial court did not abuse its discretion in declining to find Lovelace's age to be mitigating.

## IV. Sentencing—Appropriateness

[28] Lovelace further contends that his sentence was inappropriate given the nature of his offenses and his character. The sentencing range for Lovelace's murder conviction was forty-five to sixty-five years, with an advisory sentence of fifty-five years. Ind. Code § 35-50-2-3(a). The sentencing range for each of Lovelace's Level 5 felonies was one to six years, with the advisory sentence being three years. Ind. Code § 35-50-2-6(b). The sentencing range for the firearm enhancement was five to twenty years. Ind. Code § 35-50-2-11(g).

[29] The trial court imposed consecutive sentences of fifty-six years for Lovelace's murder conviction, three years for Count VI, four years for Count IX, and nine years for the firearm enhancement. Therefore, the trial court imposed the advisory sentence for Count VI, a sentence only one year above the advisory sentence for the murder conviction and only one year above the advisory sentence for Count IX, and well below the maximum for the firearm enhancement. Furthermore, the trial court suspended one year of the sentence for Count I and suspended the sentences for Counts VI and IX, resulting in an aggregate sentence of seventy-two years of incarceration, with eight years suspended to probation. As a result, Lovelace received a sentence that was well below the maximum ninety-seven-year sentence.

[30] Indiana Appellate Rule 7(B) provides that "[t]he Court may revise a sentence authorized by statute if, after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender." In analyzing such claims, we "concentrate

less on comparing the facts of [the case at issue] to others, whether real or hypothetical, and more on focusing on the nature, extent, and depravity of the offense for which the defendant is being sentenced, and what it reveals about the defendant's character." *Paul v. State*, 888 N.E.2d 818, 825 (Ind. Ct. App. 2008) (quotation omitted), *trans. denied*. The defendant bears the burden of persuading us that his sentence is inappropriate. *Sanchez v. State*, 891 N.E.2d 174, 176 (Ind. Ct. App. 2008).

[31] The nature of the offense is "found in the details and circumstances of the commission of the offenses and the defendant's participation." *Croy v. State*, 953 N.E.2d 660, 664 (Ind. Ct. App. 2011). Furthermore, "we focus on the forest—the aggregate sentence—rather than the trees—consecutive or concurrent, number of counts, or length of the sentence on any individual count." *Norton v. State*, 235 N.E.3d 1285, 1291 (Ind. Ct. App. 2024) (quotation and citation omitted). Here, Lovelace was involved in a string of robberies, the last of which resulted in the shooting death of the victim. Afterward, Lovelace rendered no assistance to Holdbrook, and instead, took part in social-media videos in which he flaunted firearms. Nothing in the details or circumstances of these offenses, or Lovelace's participation in them, paints the nature of the offenses positively.

[32] Lovelace further contends that his character did not warrant the imposition of his sentence. We note that "[t]he character of the offender is found in what we learn of the offender's life and conduct." *Croy*, 953 N.E.2d at 664. Initially, we note that Lovelace began consuming marijuana and alcohol at fourteen years

old. "A court may consider evidence that a defendant committed crimes at an earlier date as support for a finding that the defendant has a history of criminal activity, even if those acts were not reduced to judgment." *Bailey v. State*, 763 N.E.2d 998, 1004 (Ind. 2002).

[33] Lovelace contends that his criminal history contains "no evidence of violent felonies." Appellant's Br. p. 37. We nonetheless agree with the State that Lovelace's criminal history reflects poorly on his character. *See Madden v. State*, 162 N.E.3d 549, 564 (Ind. Ct. App. 2021) ("A defendant's criminal history is one relevant factor in analyzing his or her character"). Lovelace had prior adjudications for resisting law enforcement, possession of a controlled substance, and theft. *See McCray v. State*, 823 N.E.2d 740, 745 (Ind. Ct. App. 2005) (providing that "acts committed by a juvenile that would constitute a criminal offense if committed by an adult may be used to support an enhanced sentence"). Furthermore, prior to the instant offenses, Lovelace had been arrested for Level 5 felony intimidation, Level 6 felony pointing a firearm, and Class A misdemeanor carrying a handgun without a license. After he was released on bond, Lovelace committed the instant offenses and was later convicted of Level 6 felony pointing a firearm in the prior case.

[34] Lovelace's record reflects a pattern of criminal activity culminating in the commission of multiple felonies, including felony murder. Moreover, while Lovelace was in the Tippecanoe County Jail for the instant offenses, he was charged with multiple violations. Based on the foregoing, Lovelace has failed to convince us that his character did not warrant the imposition of his sentence,

and, therefore, has failed to convince us that his sentence is inappropriate. *See Sanchez*, 891 N.E.2d at 176.

[35] We affirm the judgment of the trial court.

Pyle, J., and Kenworthy, J., concur.

ATTORNEY FOR APPELLANT

Bruce W. Graham
Graham Law Firm P.C.
Lafayette, Indiana

ATTORNEYS FOR APPELLEE

Theodore E. Rokita
Attorney General of Indiana

George P. Sherman
Supervising Deputy Attorney General
Indianapolis, Indiana